Roy Edward DUCKETT and Vincent DUCKETT
*v.* STATE of Arkansas

CA CR 79-125 · 600 S.W. 2d 18

Court of Appeals of Arkansas
Opinion delivered February 20, 1980
Petition for Review denied March 24, 1980
Petition for Rehearing denied March 26, 1980
Petition for Stay of Mandate denied April 16, 1980
Released for publication April 16, 1980

*Jimmy Eaton,* for appellants.

*Steve Clark,* Atty. Gen., by: *Mary Davies Scott,* Asst. Atty. Gen., for appellee.

DAVID NEWBERN, Judge. A question in this case is whether use of the prosecutor's subpoena power to obtain the presence of a witness for questioning by a police officer, absent the prosecutor, is illegal. We hold that it is. Another question presented is whether incriminating evidence seized in a search to which consent was obtained from one of the appellants, was admissible in view of the fact that the search was instigated by information obtained through illegal questioning of a third party. The facts presented here show the evidence to have been "fruit of a poisonous tree" which was probably not sufficiently attenuated by the consent given for the search. However, we find we must affirm the convictions because of a matter not discussed in the parties' briefs. The appellants have no standing to assert the illegality of the questioning of another person.

The appellants have asked us, as well, to say the court erred in refusing to give a requested instruction. We deal with that point summarily at the outset. Although the instruction was requested, the appellants' lawyer admitted to the judge the instruction was inconsistent with the appellants' defense. Thus, we cannot give serious consideration to the point as the request seems to have been withdrawn despite the fact that when the court announced its decision not to give the instruction the lawyer asked that his "exception" be saved, giving no reason. This point will not be discussed further.

A check for $5000, was written to Janis Hamilton on an Arkansas Power and Light Co. check form. It bore the forged signature of an A.P. & L. official. The money was deposited in a bank account in the name of Janis Hamilton. It was the only deposit ever placed in that Janis Hamilton account. Two checks in the amounts of $1100 and $3500, respectively, were written on that account. The one for $1100 to "cash" was en-

dorsed by the appellant Vincent Duckett. The one for $3500, also to "cash,"[1] showed no indorsement, but other evidence showed it was deposited to a bank account held in the name of Roy E. Duckett, who is the other appellant and Vincent Duckett's brother.

After the $5000 check was discovered to be a forgery, the police investigation centered on the appellants because of their obvious relationship to the money resulting from their receipt of two large checks written on the Hamilton account. The investigation also focused on Rhunita Bryant, a former A.P. & L. employee, who had recently been fired for forging an A.P. & L. check.

A police officer prepared "prosecutor's subpoenas" for the appellants and Ms. Bryant. The subpoenas were signed by a deputy prosecutor. The appellants appeared at the police station, as subpoenaed, on July 10, 1978, and were questioned by a police officer. They were, according to the officer's testimony, not considered suspects after they were questioned. No prosecutor participated in the questioning.

Rhunita Bryant did not appear at the time required by the subpoena for her. The police officer then spoke with her father by phone, informing him of the subpoena. Her father said he would give her the message. The day after she was to have appeared in response to the subpoena, Rhunita Bryant called the officer and arranged a meeting at which she was questioned. As a result of this questioning and a subsequent affidavit Ms. Bryant executed, the officer knew a typewriter believed to have been used to type the forged check was in the possession of the appellants.

Based on Ms. Bryant's affidavit, a search warrant was obtained to search the dwelling premises of the appellants. No typewriter was found there, but an A.P. & L. check made out to Toni M. Dobbins was found, and the appellants were arrested. After the arrest, Vincent Duckett consented to a search of a night club, apparently operated by the appellants, known as "The Rooster Tail Country Club." It was there

---

[1] The appellant's statement of the case inaccurately says the checks were made out, one each, to the appellants.

that a typewriter and cartridge-type ribbon were found which were ultimately identified as having been used to prepare the forged check.

The trial judge refused to suppress this evidence. He seemed to recognize the impropriety of using the prosecutor subpoena in a police investigation, but held that the interrogation of Ms. Bryant was as a result of her voluntary participation in the investigation.

## I.  Use of the Subpoenas

We have no hesitancy in agreeing with the appellants that the prosecutor subpoena authority has been sorely abused in this case. It is not necessary to go so far; as do the appellants, to say the prosecutor's investigation is equivalent and in every way analogous to a grand jury investigation. Ark. Stat. Ann. § 43-801 (Repl. 1977), which as the basic statutory authority for use of the subpoena makes it clear the power is to be used only for a prosecutor's investigation. *Ark. R. Crim. P.* 2.2 and 2.3 make it even clearer, for those rules prohibit the police from doing the very thing the subpoena is designed to do, *i.e.,* coerce an appearance at an investigation.

Although we agree with the appellee's strongest statement on this matter, which is to the effect that no Arkansas cases have held directly that the prosecutor's subpoena may not be used in aid of a police investigation, the following cases indicate the concern of our supreme court and a federal court with the possibilities of abuse of this power and the need for strict construction and limitation of it: *State, ex rel. Street* v. *Stell,* 254 Ark. 656, 495 S.W. 2d 846 (1973); *Gill* v. *State,* 242 Ark. 797, 416 S.W. 2d 269 (1967); *Taylor* v. *State,* 220 Ark. 953, 251 S.W. 2d 588 (1952); *Pollard* v. *Roberts,* 283 F. Supp. 248 (E.D. Ark.) *aff'd per curiam,* 393 U.S. 14 (1968). *See also,* Hall, The Prosecutor's Subpoena Power, 33 Ark. L. Rev. 122, 126 (1979).

We cannot understand the basis for the trial judge's finding that the interrogation of Ms. Bryant was unrelated to the subpoena. The mere fact that she did not appear on the date commanded is hardly important when it is apparent she

arranged to meet with an officer after being reminded of the subpoena through the officer's conversation with her father.

## II. *Poisoned Fruit?*

The questioning, both of the appellants and of Rhunita Bryant, was illegal, but the illegal questioning of the appellants led to no evidence which incriminated them. If it had, we would have a clear poisonous tree problem and would be faced with the question whether Vincent Duckett's consent to the search so attenuated it as to detoxify the incriminating fruit. Analogizing to the cases which have dealt with this problem in its 4th amendment context, we might well have found the consent not sufficiently attenuating. See, *e.g., U.S.* v. *Rubalcava-Montoya*, 597 F. 2d 140 (9th Cir. 1978). *Cf., U.S.* v. *Carsello*, 578 F. 2d 199 (7th Cir. 1978), *cert. den.*, 99 S. Ct. 565.

It was, however, the illegal questioning of Rhunita Bryant which led to the evidence incriminating the appellants. We find no Arkansas case which helps us directly on the question of whether the appellants had standing to raise the illegal questioning of Ms. Bryant as a basis of the motion to suppress the evidence to be used against them. In *Fuller* v. *State*, 246 Ark. 138, 437 S.W. 2d 780 (1969), our supreme court held that a person who was legally, by permission of the owner, on premises which were illegally searched had standing to move to suppress evidence obtained in that search, citing *Jones* v. *U.S.*, 362 U.S. 257, 80 S. Ct. 725 (1960). Although our supreme court said an accused who is present has an "interest in the property" sufficient to afford him protection from illegal search, it seems the basis of the *Jones* decision was that the mere presence of a person on illegally searched premises gives him the right to complain as long as that presence is not unlawful. Regardless of the distinction there may be between the rationales of these cases, however, in both of them an illegal search affected directly the person who later complained of it. In the case before us, the illegal questioning of Rhunita Bryant was not in any way directly affective of any of the rights of the appellants.

Although Claifornia law, for example, would prohibit

admission of evidence illegally obtained regardless of whose rights were violated, *Kaplan* v. *Superior Court of Orange County,* 6 Cal. 3d 159, 98 Cal. Rptr. 649, 491 P. 2d 1 (1971), we do not find it necessary to go that far.

In a case which arose in this state, *U.S.* v. *Barber,* 557 F. 2d 628 (8th Cir. 1977), the U.S. Eighth Circuit Court of Appeals dealt with a problem arising from an illegal arrest. Two persons were charged with a federal currency law violation. Evidence which was taken in connection with an illegal arrest was said to be inadmissible in the case of the person illegally arrested, but held admissible in the case of the other defendant. We find a strong analogy to the case before us, and we hold these appellants cannot complain that evidence used against them was obtained in violation of the rights of another person.

This opinion obviously could have been terser. We have dwelt upon the illegal use of the subpoena power because we regard the matter as very serious, and we hope we will never again have before us a case in which that power is so abused.

Affirmed.