**Alfredo B. GUARDIOLA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–95–01073–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 4, 2000.

Rehearing Overruled June 15, 2000.

Stanley G. Schneider, Houston, for appellant.

Alan Curry, Houston, for appellees.

Panel consists of Justices SEARS, CANNON, and LEE.*

## OPINION ON MOTION FOR REHEARING

ROSS A. SEARS, Justice (Assigned).

On motion for rehearing, the court's opinion of March 16, 2000, is withdrawn and this opinion is issued in its place.

* Senior Justices Ross A. Sears, Bill Cannon and Norman Lee sitting by assignment.

Appellant, Alfredo B. Guardiola, was charged with three counts of arson. TEX. PEN.CODE ANN. § 28.02 (Vernon 1994). After the trial court denied his motion to suppress, appellant pleaded *nolo contendere* to each count and the trial judge found him guilty. Pursuant to a plea agreement, appellant was sentenced to forty years confinement. In five points of error, appellant contends that the trial court erred in denying his motion to suppress. We affirm.

## BACKGROUND

On May 11, 1989, Houston Police Homicide Detective Jose Selvera and Houston Fire Department Arson Investigator Hilario Garcia Torres began an arson investigation at the home of the Gonzalez family. The fire killed Elizabeth and Mario Gonzalez and their two children.

Appellant gave a statement to police the following day. They did not consider him a suspect in the arson case at that time. However, the police subsequently arrested appellant for theft of stolen property belonging to the Gonzalez family. Appellant pleaded guilty to the charge and served six months in the penitentiary.

Upon his release, Selvera and Torres questioned appellant about the arson on several occasions. The investigators claimed that appellant was still not considered to be a suspect, but thought he had material information about the arson. Eventually, appellant stopped talking to the investigators and refused to answer any questions about the arson.

At this point, the investigators, joined by Texas Department of Criminal Justice Major Paul Brown, went to Harris County Assistant District Attorney Alice Brown for help. They told her that appellant was a material witness to arson and murder and that he had refused to answer questions. Although the officers admitted they did not have probable cause to arrest ap-

pellant, they asked Ms. Brown to issue a grand jury subpoena so they could continue questioning him. Ms. Brown told the investigators that the arson investigation was not her case, but she agreed to help them and issued a grand jury subpoena.[1]

The investigators went to appellant's home and served him with the grand jury subpoena. Officer Selvera testified that the investigators planned to have appellant come to the grand jury room at 9:00 a.m. and take him to Ms. Brown's office for questioning. Selvera's statement shows that the investigators never intended appellant to testify before a grand jury. There is no other evidence or claim by any officer of the State that there was ever any attempt or intent to have appellant appear and testify before a grand jury. Furthermore, there was no evidence or claim that the grand jury was in session, and if so, was investigating the arson.

Two days later, the investigators waited for appellant outside the grand jury room. When they did not find appellant, they went to Ms. Brown's office and told her that appellant had failed to appear before the grand jury that morning. During this conversation, she received a telephone call from appellant at approximately 10:00 a.m. He told Ms. Brown that he was in the 337th District courtroom, which is approximately three to four blocks away from her office. Although that courtroom was in the same building as the grand jury room, Ms. Brown directed appellant to come to her office.

When appellant arrived at Ms. Brown's office, he was met by Ms. Brown, Selvera, Torres, and Paul Brown. Ms. Brown told appellant he could either talk to her or talk to the grand jury. After she read appellant his rights in accordance with TEX.CODE CRIM. PROC. ANN. Art. 38.22 (Vernon Supp. Pamph.1998) and determined that he understood his rights, she let the investigators question him. She told appellant that if he did not want to proceed to the grand

---

1. Texas law allows any assistant district attorney in Harris County to issue a grand jury subpoena. TEX.CODE CRIM. PROC. ANN. Art. 20.10, 20.11, 24.15 (Vernon 1994).

jury, he could talk to the investigators informally.

Selvera, Torres, and Paul Brown subsequently questioned appellant in Ms. Brown's office. After two hours had passed, the investigators asked appellant if he wanted to continue the interview at the police station. Appellant agreed. Ms. Brown told appellant he was not required to go with the investigators. In fact, she stated that the subpoena only required him to testify before a grand jury and he could go home if he did not want to be questioned. Ms. Brown also told appellant that even when he arrived at the police station he could leave at any time. Appellant stated that he understood.

When appellant and the investigators left Ms. Brown's office, they went to the police station. Torres bought sandwiches and the four men ate lunch. Shortly after lunch, Selvera asked appellant if he would take a polygraph examination. Appellant agreed and was taken to the fire station. Officer Woods performed the examination. The investigators left the fire station and went to the Harris County Jail to interview another suspect. While at the jail, Torres was paged and learned that appellant had shown signs of deception during the polygraph examination. Torres went back to the fire station and continued questioning appellant. Torres became tired and asked appellant if he wanted to call it a day and go home. Appellant did not want to leave and gave Torres two new suspect names. Selvera entered the room and questioned appellant about the new people. Thirty minutes later, appellant confessed to the arson.

## PROCEDURAL HISTORY

On September 17, 1992, the State charged appellant with the offense of capital murder. He filed a motion to suppress his confession. The trial court denied the motion on October 6, 1992. On March 7, 1993, a jury found appellant guilty and sentenced him to life in prison. Appellant filed a motion for new trial, which the trial court granted on May 12, 1993.[2]

Instead of pursuing a second capital murder trial, the State indicted appellant on three counts of arson. On December 15, 1993, appellant filed his second motion to suppress his confession. The motion was based on the record from the first suppression hearing and was supplemented by a portion of the trial record. The trial judge denied the motion. Pursuant to a plea agreement, appellant then pleaded *nolo contendere* to the arson charges. With the court's permission, he appeals the denial of his motion to suppress.

## POINTS OF ERROR

Appellant contends that his will was overborne by police misconduct and that his oral and written confessions were given involuntarily. Specifically, he argues that State: (1) failed to comply with Tex.Code Crim. Proc. Ann. Art. 38.22, Sec. 3 (Vernon Supp. Pamph.1998) and (2) violated his due process and due course of law rights because both his oral and written confessions were not freely given.

In his fifth point of error, appellant contends that the trial court abused its discretion in failing to suppress appellant's oral confession to Officer Selvera because the confession did not contain facts found to be true as required by Tex.Code Crim. Proc. Ann. Art. 38.22, § 3(c) (Vernon Supp. Pamph.1998).

### Standard of Review

 In reviewing a ruling on a motion to suppress evidence, we must determine the applicable standard of review. We should afford almost total deference to a

---

**2.** The grounds in the motion for new trial included both voir dire issues and the unusual interrogation technique by Selvera. Appellant contended that if Selvera had acknowledged his use of the technique at the motion to suppress hearing, his statement would have been suppressed. The trial court did not indicate on which ground the new trial was granted.

trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We should afford the same amount of deference to trial court's rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *See Id.* However, we may review *de novo* "mixed questions of law and fact" not falling within this category. *See Id.*

### Article 38.22, Section 3(c)

Article 38.22, section 3(a) governs the admissibility of oral confessions. An oral statement of an accused made during a custodial interrogation is generally not admissible against the accused unless an electronic recording is made of the statement. TEX.CODE CRIM. PROC. ANN. Art. 38.22, § 3(a)(1) (Vernon Supp. Pamph. 1998). However, oral statements asserting facts or circumstances establishing the guilt of the accused are admissible if at the time they were made they contain assertions unknown by law enforcement which are later corroborated. TEX.CODE CRIM. PROC. ANN. Art. 38.22, § 3(c)(Vernon Supp. Pamph.1998); *Dansby v. State*, 931 S.W.2d 297 (Tex.Crim.App.1996); *Gunter v. State*, 858 S.W.2d 430 (Tex.Crim.App.1993). We must first determine whether appellant made the statement during a custodial interrogation. If the statement did not stem from custodial interrogation, we will not reach appellant's contention that there were no facts in the confession that were found to be true.

Whether a suspect is in custody is determined upon a case-by-case basis. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex.Crim.App.1996). We consider the following objective factors to determine when custody is established: (1) an officer has probable cause to arrest a suspect and does not tell him that he is free to leave; (2) the officer manifests this knowledge to the suspect; and (3) a reasonable person in the suspect's position would believe he is under restraint to the degree associated with an arrest. *Dowthitt*, 931 S.W.2d at 255. None of these factors are present in our case.

The investigators testified that they never had probable cause to arrest appellant and thought he was a material witness to the arson. We have reviewed the record and do not find any evidence to establish probable cause. In his brief, appellant claims that investigators obtained "new, highly incriminating evidence" from a witness on the day the subpoena was issued that could constitute probable cause. Appellant did not cite to the record, and we found no evidence on this claim in the record. Appellant also suggest that his deceptive responses on the polygraph examination constituted probable cause. However, deceptive answers on a polygraph examination, standing alone, do not constitute probable cause. *See Blanks v. State*, 968 S.W.2d 414, 420 (Tex. App.—Texarkana 1998). We find that the investigators did not have probable cause to arrest appellant and never manifested knowledge of probable cause to him.

We must next determine whether a reasonable person in appellant's position would have believed that he was under restraint to the degree associated with an arrest. Appellant was questioned by several individuals over a lengthy period of time. He testified that he was never free to leave, and that officers entered and exited the interrogation room with a key. He felt he was under arrest at all times. Appellant also testified, and the investigators acknowledged, that he was a drug addict. He testified he was suffering from withdrawal and that he told the officers. Even when they let him use the restroom, Officer Wood stood outside the door. Appellant claimed that his back hurt and that the officers would not allow him to stand.

Finally, he claims he gave a confession to end the harassment from officers who would not allow him to leave.

The State offered a different version of the events leading to appellant's confession. Appellant agreed to speak with the investigators at the district attorney's office, and subsequently voluntarily agreed to go the police station. Alice Brown told appellant that he could go home and did not have to go anywhere with the investigators. While at Ms. Brown's office, appellant left her office to smoke and to get a drink of water. He was not followed in either instance. When appellant arrived at the police station he was told that he was free to go. He agreed to take a polygraph examination and discussed the results with officers. The investigators testified that the interview room was not locked and that they did not harass appellant. Additionally, prior to appellant's confession, Chief Torres told appellant that he was tired and that they could continue the questioning the next day. He asked appellant if he wanted to go home. Appellant stated that he wanted to stay. He then confessed.

Because we must give almost total deference to a trial court's findings of fact especially when those findings are based on an evaluation of credibility and demeanor, we must follow the trial court's finding that appellant was not kept in a locked room. Having reached this decision, we cannot say that appellant was in custody from the time he responded to the grand jury subpoena until he gave his confession. Therefore we withdraw our opinion and hold that the oral confession was admissible under Sec. 5, Art. 38.22 and therefore we will not reach appellant's contention that there were no facts in the confession that were found to be true. We overrule appellant's fifth point of error.

**Due Process and Due Course of Law**

In his first, second, third and fourth points of error, appellant contends that the State violated his federal and state due process and due course of law rights because both his oral and written confessions were not freely given.[3]

**Standard of Review**

■ In reviewing the voluntariness of a confession, we will give almost total deference to the trial court's determination of the historical facts, but apply a *de novo* review of the law's application to those facts. *See Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *Henderson v. State*, 962 S.W.2d 544, 564 (Tex.Crim.App.1997) (court applied federal standard of review for voluntariness of confession without deciding whether standard was proper.) We may not disturb the trial court's findings absent an abuse of discretion. *See Penry v. State*, 903 S.W.2d 715, 744 (Tex.Crim.App.1995).

**Voluntariness of the Confession**

■ Involuntary confessions offend due process only when they flow from the improper conduct of law enforcement officials. *See Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). To determine whether the circumstances render an accused's statement involuntary, we ultimately must determine whether his will was "overborne" by police coercion. *Armstrong v. State*, 718 S.W.2d 686, 693 (Tex.Crim.App.1985). We make this determination based on the totality of the circumstances surrounding the statement. *Id.* (*citing Davis v. North Carolina*, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966)). Relevant circumstances include the "length of detention, incommunicado or

**3.** Appellant does not explain why the Texas Constitution provides broader protection than the federal constitution or how that protection differs from the protection guaranteed by the federal constitution. Appellant cites no authority to support these generalizations and conclusions and we decline to make appellant's arguments for him. TEX.R.APP. P. 38.1(h); *Lane v. State*, 933 S.W.2d 504, 511 & note 7 (Tex.Crim.App.1996); *Gomes v. State*, 1999 WL 1080989 (Tex.App.-Houston [14 th Dist.] 1999, no pet. h.).

prolonged detention, denying a family access to a defendant, refusing a defendant's request to telephone a lawyer or family member, and physical brutality." *Id.*

■ Appellant offered several factors to support his argument that his oral and written confessions were involuntary: (1) the prolonged interrogation, (2) coercive surroundings including isolation from family and hunger, (3) rigorous questioning, (4) physical and mental impairments brought about through his lack of formal education and drug withdrawals, and (5) a delay in his arraignment. We have detailed these and other factors in the previous sections.

The State controverted most of appellant's assertions. We are concerned with the length of the questioning and the tag team tactics employed by the investigators over a thirteen hour period. However, the trial court found that appellant could leave at any time, understood the warnings given to him, and readily responded to questions asked to him. The court also found that appellant was not locked in the interview room. The investigators did not threaten appellant or promise him anything in return for a confession. Appellant did not suffer from physical illness and the investigators did not commit any acts of violence against him. In light of all the evidence, we find that these facts do not render the confessions involuntary. *Smith v. State*, 779 S.W.2d 417, 428 (Tex.Crim. App.1989).

The trial court made express written findings of fact that the confession was voluntarily given. We find that the record supports the trial courts findings and will give almost total deference to the trial court's findings of the historical facts. After considering all of the circumstances, we find that appellant's confessions were given voluntarily. Appellants first, second, third and fourth points of error are overruled.

## GRAND JURY SUBPOENA

■ Although appellant did not specifically raise the issue of the grand jury subpoena as a point of error, we believe that fundamental fairness and considerations of due process involved in this case require us to address whether the issuance of the grand jury subpoena involved a seizure of appellant for Fourth Amendment purposes.[4]

■ As a general rule, a subpoenaed witness's appearance before a grand jury does not involve a seizure of the witness for Fourth Amendment purposes. *See United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). However, probable cause standards should be met if the subpoena power is unjustifiably manipulated to permit a detention that is functionally indistinguishable from an arrest pursuant to a warrant. *See Boyle v. State*, 820 S.W.2d 122 (Tex.Crim.App.1989) (orig.submission); 41 George E. Dix and Robert O. Dawson, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 18.38 (2d ed.1995).

The most instructive case on the issue of grand jury subpoena abuse is *Boyle v. State*, 820 S.W.2d 122 (Tex.Crim.App.1989) (orig.submission). In *Boyle*, Amarillo police found the body of a murdered hitchhiker. They received information that the trucker, who was seen picking up the deceased, would be in Diboll the next day. Lacking sufficient probable cause to issue an arrest warrant, a Sergeant with the Amarillo police department acquired a grand jury subpoena and attachment for the defendant. This information was dispatched to Diboll police. The Diboll police held the defendant for the Amarillo police department. The defendant was given his *Miranda* warnings prior to custodial interrogation. After the initial interrogation,

---

4. The discretion of the courts of appeals to address unassigned error is well-established in Texas law. *See Whatley v. State*, 946 S.W.2d 73, 76–77 n. 6 (Tex.Crim.App.1997); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim.App.1990); *Perry v. State*, 703 S.W.2d 668, 670 (Tex.Crim.App.1986).

the defendant was arraigned and again given his *Miranda* warnings. He later signed a consent to search form and incriminating evidence was discovered pursuant to this search.

In a hearing on a motion to suppress, the defendant contended his arrest,pursuant to the grand jury subpoena, was illegal and violated his Fourth and Fourteenth Amendments to the U.S. Constitution, as well as his rights under Art. I, Sec. 9 of the Texas Constitution. He argued that his arrest was merely a "pretext arrest" and was used to obtain incriminating evidence which the State could not obtain in any legal manner. The State vigorously asserted it was not a pretext arrest because it obtained a subpoena pursuant to Article 20.10, and Article 24.15 of the Code of Criminal Procedure.

On original submission, the Court of Criminal Appeals found that the arrest was illegal for lack of probable cause.

> We do hold that the procedure utilized in placing the appellant under arrest pursuant to a grand jury material witness attachment was a pretext, subterfuge, and deceptive artifice intentionally employed to circumvent the principles and tenets of the Fourth and Fourteenth Amendments to the United States Constitution and Art. I, Sec. 9 of the Texas Constitution. Consequently, we conclude that appellant's arrest on October 17, 1995, as a result of the issuance of the grand jury attachment, was illegal and unlawful for lack of probable cause.

*Boyle v. State*, 820 S.W.2d at 130.

On motion for rehearing the Court of Criminal Appeals affirmed the conviction because the owner of the tractor trailer had given police permission to search the tractor prior to the search. Therefore, permission from the defendant was not necessary. Notwithstanding the ultimate outcome of the appeal, the Court did not change its' language or condemnation of abuse of grand jury process by the State.

The assistant district attorney in this case similarly abused the grand jury subpoena power by issuing the subpoena at the sole request of the investigators. The prosecutor's power to subpoena must not be used as a tool for police officers to force a suspect to talk when he previously refused to do so. The Texas Legislature has not chosen to vest police officers with subpoena power, and it would circumvent that legislative judgment to allow the police to make use of the grand jury process in order to do indirectly what they cannot do directly.

Although the grand jury started life as a protection against prosecution without adequate cause, judges in many jurisdictions recognize that it has in fact become a tool of the State.[5] Our sister court has also recognized the potential for grand jury subpoena abuse. *See Thurman v. State*, 861 S.W.2d 96, 100 (Tex.App.-Houston [1 st Dist.] 1993, no writ). In *Thurman*, Justice Cohen concurred with his own opinion to emphasize the evils resulting from the States' abuse of the grand jury subpoena. Justice Cohen urged legislation that would limit those who can issue grand jury subpoenas, and limit subpoenas' use to only those matters under investigation by the grand jury. New legislation would prohibit the States' use of a grand jury subpoena to go on a fishing expedition when they could not do so by any other means.

We cannot allow the State to violate a person's constitutional rights just to satisfy its desire to investigate a crime. A grand jury subpoena is one of the State's most powerful tools. In the event the State abuses or misuses this power, it may result in an illegal seizure and a breakdown of our constitutional guarantees. The prosecutor and the investigators stepped outside the scope of their authority in abusing the power of the

5. *People v. Boulet*, 88 Misc.2d 353, 354, 388 N.Y.S.2d 250; *People v. Arocho*, 85 Misc.2d 116, 379 N.Y.S.2d 366; *Duckett v. State*, 268 Ark. 687, 600 S.W.2d 18 (Ark.App.1980).

grand jury subpoena. We find that the detention was unlawful and resulted in an illegal arrest.

### ATTENUATION

 Having concluded that the arrest of appellant was improper, evidence obtained as a direct result of the illegal arrest is generally suppressed under the exclusionary rule of the Fourth Amendment of the U.S. Constitution and Article 1, Section 9 of the Texas Constitution. *See Wong Sun v. United States,* 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963); *Boyle v. State,* 820 S.W.2d 122, 130 (Tex.Crim.App.1989). However, if the State can demonstrate that the connection between appellant's illegal arrest and his subsequent confession is sufficiently attenuated from the primary taint to permit its use at trial, then the illegal arrest will not prevent the court from denying appellant's motion to suppress. *See Jones v. State,* 833 S.W.2d 118, 124 (Tex.Crim.App.1992); *Fierro v. State,* 706 S.W.2d 310, 314 (Tex. Crim.App.1986).

 To determine whether the taint on evidence obtained subsequent to an illegal arrest is sufficiently attenuated to permit its use at trial, we consider four factors: (1) the giving of *Miranda* warnings; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. *See Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Johnson v. State,* 871 S.W.2d 744, 751 (Tex. Crim.App.1994). All four factors must be considered, and no one factor is dispositive. *Johnson v. State,* 871 S.W.2d at 751.

 The record reflects that appellant received *Miranda* warnings on at least two occasions: (1) when Alice Brown spoke to him in her office, and (2) before he gave his written statement and confession. However, the mere giving of *Miranda* warnings cannot remove the taint of an unconstitutional arrest. To hold otherwise would substantially dilute the effect and purpose of the exclusionary rule. *See Davis v. Mississippi,* 394 U.S. 721, 726–727, 89 S.Ct. 1394, 1397–1398, 22 L.Ed.2d 676 (1969); *Mapp v. Ohio,* 367 U.S. 643, 648, 81 S.Ct. 1684, 1687, 6 L.Ed.2d 1081 (1961).

 The next factor we must consider concerns temporal proximity. This factor is more ambiguous and does not carry as much weight as the giving of *Miranda* warnings. *See Maixner v. State,* 753 S.W.2d 151, 156 (Tex.Crim.App.1988). From the time appellant entered the prosecutor's office, until the time he confessed to the arson, approximately thirteen hours elapsed. Texas courts have reached many different conclusions about the amount of time between the illegal arrest and confession necessary to attenuate the taint.[6]

 Under the facts in our case, the confession was sufficiently attenuated from the taint of the grand jury subpoena. Ms. Brown told appellant that he did not have to go with the investigators and that he could go home. She emphasized that the subpoena only required him to testify before the grand jury. Ms. Brown also informed appellant that he could leave the police station at any time. At the police station, Chief Torres told appellant he was free to leave. In fact, when asked to leave, appellant insisted that the interview continue so that he could remember who had committed the arson. Approximately

---

**6.** Texas cases resolved in favor of the defendant range from spans of one and a half (*Ussery v. State,* 651 S.W.2d 767 (Tex.Crim. App.1983)) and two hours (*Green v. State,* 615 S.W.2d 700 (Tex.Crim.App.1981)) to two or three days (*Beasley v. State,* 674 S.W.2d 762 (Tex.Crim.App.1982)), while cases resolved in favor of the State range from three hours (*Dowdy v. State,* 534 S.W.2d 336 (Tex.Crim. App.1976)) and five hours (*Coleman v. State,* 643 S.W.2d 947 (Tex.Crim.App.1982)) to twenty-four hours (*Townsley v. State,* 652 S.W.2d 791 (Tex.Crim.App.1983)), and two days (*Alonzo v. State,* 591 S.W.2d 842 (Tex. Crim.App.1979)).

thirteen hours had passed since appellant arrived at Ms. Brown's office. Sufficient time had passed to attenuated the taint of the confession.

We next examine any intervening circumstances that occurred between the arrest and the confession. There is no indication in the record that an event such as taking appellant before a magistrate, procuring an arrest warrant, or releasing him from custody occurred. *See Johnson v. State*, 871 S.W.2d at 751. However, Ms. Brown's and Chief Torres conversation with appellant that he could go home favor the State's position.

Finally, we must consider the purpose and flagrancy of the official misconduct. This is one of the most important factors to consider. *See Bell v. State*, 724 S.W.2d 780, 789 (Tex.Crim.App.1986). The clearest indications of attenuation should be required where police conduct is the most flagrantly abusive. The sole purpose of the grand jury subpoena was to bring appellant before the investigating officers for questioning, not to bring him before the grand jury. The investigators succeeded in transforming a court process into a function of their own. In our view, this conduct was a flagrant violation of the appellant's constitutional rights.

Because we now follow the findings of the trial court that appellant was not kept in a locked room, we find that the evidence demonstrates that the connection between appellant's illegal arrest and his subsequent confession is sufficiently attenuated from the primary taint to have permitted its use at trial. We affirm the judgment of the trial court.

Justice NORMAN LEE concurs in the result only.