Affirmed and Memorandum Opinion filed October 20, 2005









Affirmed and Memorandum Opinion filed October 20, 2005.

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-04-00531-CR

_______________

 

WILLIAM MICHAEL CHAMBLIN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from 262nd District Court

Harris County, Texas

Trial Court Cause No. 982,001

                                                                                                                                               


 

M
E M O R A N D U M   O P I N I O N

After a jury convicted William Michael Chamblin of capital
murder,[1]
the trial court sentenced him to life in prison.  On appeal, he challenges (1) the trial court=s denial of his motion to suppress;
(2) the admissibility of an officer=s testimony regarding a 911 call; and
(3) the legal and factual sufficiency of the evidence supporting his conviction.  We affirm.

 








                              i. 
Factual and Procedural Background

On Friday, June 13, 2003, at approximately 7:30 p.m.,
appellant shot his wife and daughter in their Baytown, Texas home.  Shortly after 3:00 a.m. the following morning,
appellant called 911 and, without identifying himself by name, informed the
operator that he had killed his wife and daughter and provided the address of
his residence.  Baytown Police SWAT team
officers were dispatched to appellant=s home and after a three-hour
standoff, appellant surrendered.  Upon
entry into appellant=s home, officers found the bodies of appellant=s wife and daughter in the
kitchen.  Both victims died from gunshot
wounds to the head and chest.

Appellant was taken into custody and later that morning met
with Detective J.R. Miller of the Baytown Police Department, who read appellant
his rights.  In a videotaped statement,
appellant admitted to shooting his wife and daughter, and to making the 911
call.  Appellant reiterated the same
information in a written statement.  A
jury found appellant guilty of capital murder, and the trial court sentenced
him to life in prison.

                                                               II. 
Discussion

In appellant=s first and second issues, he challenges the trial court=s denial of his motion to suppress
his videotaped and written statements. 
In his third issue, appellant argues the trial court erred by admitting
an officer=s trial testimony regarding
statements made by a police dispatcher. 
Lastly, appellant argues in his fourth and fifth issues that the
evidence is legally and factually insufficient to support his conviction.

1.         Did the Trial
Court Err in Denying Appellant=s Motion to Suppress?








In a pre-trial motion to suppress, appellant sought to
exclude both his videotaped and written statements.  Specifically, appellant argued in his motion
that Miller should not have proceeded with questioning following his statement
to Miller that he did not wish to waive his rights.  Appellant maintains that all statements he
made subsequent to this assertion constitute an involuntary confession, thus,
he argues the trial court erred in denying his motion.  We disagree.

A.        Standard
of Review

We conduct a bifurcated review of a trial court=s suppression ruling; that is, we
give almost total deference to the trial court=s findings of fact, but conduct a de
novo review of the trial court=s application of law to those facts.  Cook v. State, 63 S.W.3d 924, 927
(Tex. App.CHouston [14th Dist.] 2002, pet. ref=d) (citing State v. Ross, 32
S.W.3d 853, 856 (Tex. Crim. App. 2000) (en banc).  When, as here, the trial court does not file
findings of fact, we view the evidence in the light most favorable to the
ruling, and assume the trial made implicit findings of fact that support its
ruling as long as those findings are supported by the record.  Id. 
Further, if the trial court=s decision is correct on any theory
of law applicable to the case, the decision will be sustained.  Id. 
Because the issue in this case does not involve a disagreement about the
facts or the credibility of a witness, but rather, whether Miller=s actions violated appellant=s rights against self-incrimination,
we review the issue de novo.

B.        Analysis








When an accused claims his confession was involuntary, the
burden shifts to the State to prove its voluntariness.  Mason v. State, 116 S. W.3d 248, 257
(Tex. App.CHouston [14th Dist.] 2003, pet ref=d). 
Involuntary confessions are inadmissible only when they flow from the
improper conduct of law enforcement officials. 
Guardiola v. State, 20 S.W.3d 216, 223  (citing Colorado v. Connelly, 479 U.S.
157, 163B64 (1986)).  To determine whether the circumstances render
an accused=s statement involuntary, we
ultimately must determine whether his will was Aoverborne@ by police coercion.  Guardiola, 20 S.W.3d at 223 (citing Armstrong
v. State, 718 S.W.2d 686, 693 (Tex. Crim. App. 1985) (en banc)).  We make this determination based on the
totality of the circumstances surrounding the statement.  Id. 
(citing Davis v. North Carolina, 384 U.S. 737, 741 (1966)).    Relevant circumstances may include the Alength of detention, incommunicado or
prolonged detention, denying a family access to a defendant, refusing a
defendant=s request to telephone a lawyer or
family member, and physical brutality.@ 
Id.

The videotaped interview between appellant and Miller begins
as follows:

MILLER:  I know
that this is probably one of the more stressful days in your entire life, and I
don=t want to increase that, but I have to read you some
rights or legal warnings.  Okay?  Nothing to get excited about, but I have to
read them to you, okay?  I=m going to ask you some questions about what=s going on this morning, and see if we can kind of
piece some things together.  And before I
do that, I=ve got to read you these, okay?  It says you have the right to remain silent
and not make any statement at all, and that any statements you make may be used
against you at your trial.  Do you
understand that?

APPELLANT: 
Yeah.

MILLER: 
Okay.  Any statement you make may
be used as evidence against you in court. 
Do you understand that?

APPELLANT:  Yes.

MILLER: 
Okay.  You have the right to have
a lawyer present to advise you prior to and during any questioning.  Do you understand that?

APPELLANT:  Yes.

MILLER: 
Okay.  If you are unable to employ
a lawyer, you have the right to have a lawyer appointed to advise you prior to
and during any questioning.  Do you
understand that?

APPELLANT:  Yes.


MILLER: 
Okay.  You have a right to
terminate the interview at any time.  Do
you understand all those rights?

APPELLANT:  Yes.

MILLER: 
Okay.  Now, if you would please,
just sign right here . . . just that . . . that I read them and that you
understand what those rights are.

APPELLANT: 
(Immediately signs).








MILLER:  The
bottom part of this says, >I have read this statement of my rights and I
understand what my rights are.  I am
willing to make a statement and answer questions.  I wish to waive the above rights.  I understand and know what I am doing.=  Essentially,
that just gives me your consent to ask you some questions about what happened
this morning.  It doesn=t mean that you can=t stop
talking to me when you get ready to. 
Okay?

APPELLANT: 
Yes.  I don=t know that I have any rights to waive.  I don=t really
want to waive any rights; I don=t mind talking to you though.

MILER:  Okay. 
Well your rights are these that I just read you here.

APPLLANT: 
Right.

MILLER: 
Okay.  And if you=re willing to talk to me, I=d like for you to sign this, right on that line.

APPELLANT: 
(Looks at document for approximately seven seconds, then signs.)

 

Fewer than two minutes after signing the statement waiving his rights,
appellant admitted to making the 911 call. 
Three minutes later, appellant admitted to shooting both his wife and
daughter.  Following the videotaped
interview, Miller asked appellant if he would be willing to give a written
statement and appellant agreed to do so. 
Appellant=s written statement began with the following:  

Prior to making this statement, I have been warned by
Detective J.R. Miller that I have the right to remain silent and not make any
statement at all and that any statement I make may be used against me at my
trial.  Two, any statement I make may be
used against me in court.  Three, I have
the right to have a lawyer present to advise me prior to and during any
questioning.  Four, if I am unable to
employ a lawyer, I have the right to have a lawyer appointed to advise me prior
to and during any questioning.  And,
five, I have the right to terminate the interview at any time.  I have, prior to and during the making of
this written statement, knowingly, intelligently, and voluntarily waived the
rights set out above and make the following statement.

 

The written statement contains the same admissions made by appellant
during the videotaped interview.








Appellant does not argue that his statements were the product
of a prolonged detention or aggressive questioning, and the record affirmatively
shows that such tactics were not employed. 
Appellant made his admissions at the very beginning of the interview and
there is nothing in the record that suggests coercion, brutality or other
improper conduct on the part of Miller. 
In fact, the videotape shows that throughout the interview, both
appellant and Miller remained seated and spoke calmly.  Appellant never sought the advice of counsel,
never requested to speak to family members, nor did he ever ask to terminate
the interview.  On  the contrary, the evidence shows that
appellant was given several opportunities to assert his rights, and repeatedly
chose not to do so.  When appellant
stated, AI don=t know that I have any rights to
waive.  I don=t really want to waive any rights; I
don=t mind talking to you though,@ Miller reminded appellant of his
rights and provided appellant an opportunity to reconsider his decision to make
a statement.  Appellant then re‑examined
the document informing him of the rights he would be giving up, signed it, and
began to speak to Miller.  In light of
the totality of the circumstances surrounding appellant=s videotaped and written statements,
we conclude the State has shown that both were made voluntarily, and thus, the
trial court did not err in denying appellant=s motion to suppress these
statements.  We overrule appellant=s first and second issues.

2.         Did the Admission of
Hearsay Testimony Constitute Reversible Error?

In his third issue, appellant challenges the admissibility of
the following exchange between the prosecutor and a testifying officer of the
Baytown Police SWAT team:

Q:        What
was the nature of the call to [appellant=s address]?

A:        I was
informed that patrol units had responded to a shooting call, a 911 call was
received, subject on the line, stating he had shot his wife.

DEFENSE COUNSEL: 
Objection your honor, to continuing hearsay.

THE COURT: 
Overruled.

Q:        You may
answer that.  Go ahead.  What was the subject on the line, according
to your information?

A:        Communications
operator advised me that a subject had phoned 911 stating he had shot his wife
and child and hung up the phone, saying nothing else.

 








Despite appellant=s objection to this testimony, a
substantially similar question was posed to the next witness, Officer Chris
Simunek, and no objection was raised:

Q:        On June
14th, 2003, did you have an occasion to be called to [appellant=s address]?

A:        Yes, I
was.

Q:        What
kind of call brought you to that location?

A:        It was
a 911 call.  Dispatch had stated that a
male suspect had called advising that he had shot his wife and child.

Q:        And at
what time were you dispatched to that location? . . . 

 

Later in the trial, the State offered an audio tape of the
911 call into evidence, again, without objection.  A witness for the State identified the voice
on the tape as that of the appellant, and appellant did not challenge or object
to her testimony. 

Generally, when a police officer=s testimony is admitted, not for its
truth, but to establish the course of events and circumstances leading to an
arrest, it is not hearsay.  Reed v.
State, 794 S.W.2d 806, 809 (Tex. App.CHouston [14th Dist.] 1990, pet. ref=d). 
But, a police officer Ashould not be permitted to relate historical aspects of the
case, replete with hearsay statements in the form of complaints and reports on
grounds that she was entitled to tell the jury the information upon which she
acted.@ 
Schaffer v. State, 777 S.W.2d 111, 114B15 (Tex. Crim. App. 1989) (en
banc).  To preserve error in admitting
evidence however, a party must make a proper objection and get a ruling on that
objection each time the inadmissible evidence is offered or obtain a running
objection.  Lane v. State, 151
S.W.3d 188, 193 (Tex. Crim. App. 2004). 
An error in admitting evidence is cured where the same evidence comes in
without objection.  Id.  By failing to either restate his hearsay
objection or to obtain a running objection, appellant has waived the issue for
our review.  Accordingly, we overrule
appellant=s third issue.








3.         Is the
Evidence Legally and Factually Sufficient?

In his fourth and fifth issues,
appellant contends the evidence is both legally and factually insufficient to
show that he took the lives of two persons in the same criminal
transaction.  Appellant=s argument on these issues is
predicated on his claim that the videotaped and written statements and the
officer=s testimony regarding the 911 call
were inadmissible.  Having overruled
appellant=s three issues above, we will
consider the content of both statements and the 911 call as part of our legal
and factual sufficiency analysis.  

A.        Standard
of Review

When an appellant challenges both the
legal and factual sufficiency of the evidence, we address the legal sufficiency
challenge first because an affirmative finding on that issue will result in a
rendition of a judgment of acquittal, while a finding of factual insufficiency
warrants a remand for a new trial.  Nickerson
v. State, 69 S.W.3d 661, 668 (Tex. App.CWaco 2002, pet. ref=d). 
When conducting a legal sufficiency review, we must determine whether,
after viewing the evidence in the light most favorable to the verdict, a
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Moff v. State, 131 S.W.3d 485,
488 (Tex. Crim. App. 2004).  During this
process, we do not re‑evaluate the credibility of witnesses or the weight
of evidence, and we will not substitute our judgment for that of the fact‑finder.  Johnson v. State, 967 S.W.2d 410, 412
(Tex. Crim. App. 1998).  We affirm the
judgment if any rational trier of fact could have found the elements of the
offense beyond a reasonable doubt.  McDuff
v. State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997) (en banc).

B.        Analysis








A person commits the offense of
capital murder if he intentionally or knowingly takes the life of more than one
human being during the same criminal transaction.  Tex.
Pen. Code Ann. '' 19.03(7)(A), 19.02(b) (Vernon 2003).  An act is committed intentionally when it is
the actor=s conscious objective or desire to
engage in the conduct which causes the result. ' 6.03(a).  A person acts knowingly when he knows that
the conduct is reasonably certain to cause the result. ' 6.03(b).  An accused=s intent may be inferred from his
acts, words, and conduct.  Mouton v.
State, 923 S.W.2d 219, 223 (Tex. App.CHouston [14th Dist.] 1996, no
pet.).  A culpable mental state is almost
always proven through circumstantial evidence. 
Warren v. State, 797 S.W.2d 161, 164 (Tex. App.CHouston [14th Dist.] 1990, pet. ref=d). 
The jury must review all the evidence and may reasonably conclude from
the circumstantial evidence that the requisite mental state existed.  Mouton, 923 S.W.2d at 223.








Here, the manner in which appellant
committed the murders plainly suggests his specific intent to kill.  Appellant admitted to shooting both victims
in the head and the chest with a nine millimeter Beretta handgun.  A finder of fact may infer the specific
intent to kill from the use of a deadly weapon, unless in the manner of its use
it is reasonably apparent that death or serious bodily injury could not result.  Childs v. State, 21 S.W.3d 631, 635 (Tex.
App.CHouston [14th Dist.] 2000, pet ref=d). 
A handgun, like that used by the appellant, is a deadly weapon per
se.  Tex.
Pen. Code. Ann. ' 1.07(a)(17)(a) (Vernon 2003).  Appellant=s firearm was loaded.  Because appellant failed to remove the
bullets and used a gun he knew to be loaded, the jury could also reasonably
infer an intent to kill.  See Mouton,
923 S.W.2d at 223.  Additionally, the
medical examiner testified that one of the shots was fired fewer than two feet
from the victim=s head.  Where a deadly
weapon is fired at close range and death results, the law presumes an intent to
kill.  Womble v. State, 618 S.W.2d
59, 64 (Tex. Crim. App. [Panel Op.] 1981). 
Finally, appellant affirmatively stated that he shot both victims, two
times each, in approximately less than a minute.  When two victims are shot in the same manner,
with the same weapon, and when their bodies were deposited only a few feet from
each other, the evidence is sufficient to show that the shootings were part of
the same criminal transaction.  Rios
v. State, 846 S.W.2d 310, 314B15 (Tex. Crim. App. 1992) (en
banc).  Thus, based on the evidence, we
conclude a rational trier of fact could have found beyond a reasonable doubt
that appellant committed all elements of the offense of capital murder.  The evidence is legally sufficient to support
the jury=s verdict and we overrule appellant=s fourth issue.

In reviewing the evidence for factual
sufficiency, we view it neutrally, setting aside the verdict only if (1) the
evidence supporting the verdict, if taken alone, is too weak to sustain the
finding of guilt beyond a reasonable doubt, or (2) the contrary evidence is so
strong that the State could not have met its burden of proof beyond a
reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484B85 (Tex. Crim. App. 2004).  In our evaluation of the evidence, we must be
deferential to the jury=s findings and resist intruding on its role as the sole judge
of the witnesses= credibility and of the weight to be given to the
evidence.  Johnson v. State, 23
S.W.3d 1, 7 (Tex. Crim. App. 2000) (en banc). 
As noted above, the evidence supporting the verdict is overwhelming, and
appellant has put forth no evidence to the contrary.  Thus, the jury=s decision is not so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.

In conclusion, we hold that the trial
court properly denied appellant=s motion to suppress, appellant waived his complaint
regarding the officer=s  hearsay testimony,
and further, that the evidence is legally and factually sufficient to support
the conviction.  Accordingly, we affirm
the trial court=s judgment.

 

 

/s/        Eva M. Guzman

Justice

 

Judgment
rendered and Memorandum Opinion filed October 20, 2005.

Panel
consists of Justice Fowler, Edelman, and Guzman.

Do
Not Publish C Tex.
R. App. P. 47.2(b).

 











[1]           See
Tex. Pen. Code Ann. ' 19.03(7)(A) (Vernon 2003).