Opinion issued April 13, 2006













In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00661-CR




TERON LARAY LIPSCOMB, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 180th District Court
Harris County, Texas
Trial Court Cause No. 983570




MEMORANDUM OPINION
          Appellant, Teron Laray Lipscomb, was charged by indictment with murder. 
A jury found him guilty as charged and assessed punishment at confinement for 30
years. On appeal, appellant complains that the trial court erred by denying his motion
to suppress and that the evidence is insufficient to support his conviction. We affirm.
BACKGROUND
          On December 2, 2002, Jeremy Mayes rode his bicycle through an apartment
complex parking lot. Yolanda Stanford and Latoshia Simpson, who were about to
enter Stanford’s truck, exchanged greetings with Mayes, who then rounded a corner. 
Eleven-year-old Takesha Stafford was on her balcony with her little sister when she
saw a young man riding his bicycle through the apartment complex. She saw a man
in a hooded black sweatshirt approach Mayes and talk to him. The man in the
sweatshirt pulled out a gun, and Mayes said, “No, don’t shoot me, dog.” The man
fired the gun and hit Mayes, started to leave, then turned and fired the gun a second
time. Mayes ran into a nearby apartment and died in the entryway. 
          Stanford and Simpson, who had ducked for cover when they heard the shots,
saw a man wearing a hooded dark sweatshirt run toward a parked car. The driver got
out of the car, the man in the sweatshirt got in the driver’s seat, and the driver got in
the passenger seat. They drove away. Stafford, Stanford, and Simpson were unable
to identify the man in the hooded sweatshirt. 
          Approximately one year later, the police still did not have a suspect, although
a man known on the street as “Jersey” was considered a person of interest. Then, a
woman from Portland, Oregon named Sara Champoux called Crimestoppers and was
referred to Investigator M. Reynolds. Champoux told Reynolds that she and
appellant had dated when appellant lived in Portland. Appellant told her that he had
moved to Portland because he had killed a boy in Houston. She did not believe him. 
After a few months, appellant returned to Houston, and when Champoux visited him
there, he showed her where he had killed the man. He told her that some children had
seen the shooting, but had not told the police. Appellant told her that the man he shot
had insulted his friend, Jersey. Champoux returned to Portland because she was
afraid that appellant might kill her. 
          Reynolds obtained a warrant and arrested appellant. Reynolds read appellant
his Miranda rights and interviewed appellant from about 1:00 p.m. to 4:28 p.m. 
Reynolds reduced appellant’s statement to writing, which appellant signed, and
Reynolds and Officer Davis signed as witnesses at 8:41 p.m. 
DISCUSSION
Motion to Suppress
          In his first point of error, appellant contends that the trial court erred by
denying his motion to suppress his statement because (1) the statement was
involuntary and (2) the statement was the product of an illegal arrest. 
Standard of Review
          We review a trial court’s ruling on a motion to suppress evidence for abuse of
discretion. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Taylor
v. State, 945 S.W.2d 295, 297 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d). The
Court will afford almost total deference to a trial court’s determination of historical
facts that the record supports, especially when the findings are based on the
evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997). The fact finder is the sole judge of the witnesses’ credibility and
may accept or reject any or all of the witnesses’ testimony. Taylor, 945 S.W.2d at
297. In reviewing a ruling on a question of application of law to facts, we review the
evidence in the light most favorable to the trial court’s ruling. Guzman, 955 S.W.2d
at 89. 
Involuntary Statement
          Appellant contends that his statement was involuntary because (1) he signed
it after being held in custody more than nine hours; (2) he was physically abused
during interrogation by Officer Davis, who slapped and choked him while he was
handcuffed; (3) he repeatedly asked for an attorney on the way to the police station
and during the interrogation, yet the officer did not terminate the interrogation; and
(4) his limited intelligence made him easy to coerce. When an accused claims that
his confession was not voluntary, the burden is on the State to prove its voluntariness. 
Farr v. State, 519 S.W.2d 876, 880 (Tex. Crim. App. 1975). We look at the totality
of the circumstances surrounding the statement to determine whether appellant’s will
was overborne by police coercion. Guardiola v. State, 20 S.W.3d 216, 223 (Tex.
App.—Houston [14th dist.] 2000, pet ref’d). 
          Reynolds and appellant testified at the hearing on the motion to suppress.
Reynolds testified that he read appellant his rights and that appellant indicated that
he understood them. Reynolds testified that appellant was at the police station by
about 11:45 a.m., the interrogation started at about 1:00 p.m., he started typing
appellant’s statement at 4:28 p.m., and appellant signed it at 8:41 p.m. Reynolds
further testified that during that time, appellant was given several glasses of water,
was allowed to smoke about 10 cigarettes, was taken to the rest room several times,
and declined an offer of snack crackers. Reynolds stated that appellant was not given
any dinner, but that the officers did not have dinner either. Reynolds testified that
appellant did not request an attorney during the ride to the police station or after they
arrived at the station, nor did appellant request that the interview be terminated. He
also testified that he did not see Officer Davis or any other officer physically abuse
appellant. Reynolds stated that, when he gave appellant the opportunity to make a
written statement, appellant said that his handwriting was not good and asked
Reynolds to write or type the statement. 
          Appellant testified that he asked for an attorney while he was being taken to
the police station and continually throughout the interrogation. He said that the
officer who was not in the courtroom (presumably Davis) slapped and choked him
while he was handcuffed, but that Reynolds had not mistreated him. Appellant
testified that he was taken to the restroom one time during the interrogation, but that
he was not offered any food, although he had informed the officers at the time of his
arrest that he had not eaten all day. He said that he was allowed to smoke “after this
was all over.” Appellant testified that he told Reynolds that he did not want to write
his statement because he “couldn’t read and write that good.” 
          The length of the interrogation is one factor to be considered in determining
whether a suspect’s statement is coerced. See id. (stating that length of detention is
relevant to determination of coercion). Here, it is not contested that appellant was in
police custody for more than nine hours and was interrogated for almost eight hours
before signing his statement. However, a lengthy interrogation does not
automatically render a statement involuntary. See Smith v. State, 779 S.W.2d 417,
429 (Tex. Crim. App. 1989) (holding that eight hours of questioning without food did
not render confession involuntary in light of defendant’s willingness to continue). 
          In this case, appellant was given water, was allowed rest room breaks, was
offered food, which he declined, and was permitted to smoke. After Reynolds
completed typing the statement, he gave a copy to appellant for his review, and
appellant made some changes and corrections, which were then put into the final
statement. There is no indication that appellant’s will was overborne due to the
length of his interrogation. 
          The evidence regarding appellant’s complaints that he was physically abused
and that the officers failed to terminate the interview after he asked for an attorney
was controverted by Reynolds’s testimony. We must therefore defer to the trial
court’s fact findings relating to these complaints. The trial court filed findings of fact 
as follows: 
(3)appellant never asked for an attorney nor did he ever request that
the interview be terminated;
 
. . . .
 
(5)appellant was neither threatened nor coerced by anyone into
cooperating, nor was he promised any benefit in return for his
statement; 
 
. . . .

Because Reynolds’s testimony is evidence supporting these findings, we cannot say
that the trial court abused its discretion in finding that appellant did not request an
attorney or that appellant was not coerced. 
          In support of his complaint that his limited intelligence rendered his statement
involuntary, appellant offered the testimony of Dr. John Pinkerman, a psychologist. 
Pinkerman testified that appellant’s I.Q. was 78 and that his ability to read and write
was “very underdeveloped.” He also testified that someone with appellant’s level of
intelligence might be more easily manipulated and opined that appellant was wanting
to be cooperative in giving his statement. However, Pinkerman also testified that
appellant was able to interact with him during the testing process and, generally, was
able to understand his questions, although Pinkerman sometimes had to explain
specific words. It was his opinion that appellant was fully capable of comprehending
the Miranda warnings that were given to him. 
          The record does not support appellant’s contention that he was coerced in
making his statement because of his limited intelligence. We hold that the State has
carried its burden to show that appellant’s statement was voluntary.
Illegal Arrest
          Appellant also contends that his motion to suppress should have been granted
because his statement was the product of an illegal arrest. Appellant argues that the
facts supporting Reynolds’s affidavit for the arrest warrant were insufficient to
support the magistrate’s finding of probable cause to issue an arrest warrant because
the affidavit does not reveal that Champoux was a convicted felon who had been on
the run from the law or that Reynolds never personally met with Champoux, but had
viewed the Spokane, Washington Police Department’s video of Champoux’s
statement. Appellant cites no authority to support either of these complaints.
          In determining the sufficiency of an affidavit for an arrest warrant, we limit our
review to the four corners of the affidavit. McFarland v. State, 928 S.W.2d 482, 487
(Tex. Crim. App. 1996). The affidavit need only show probable cause to arrest a
suspect and need not contain the specificity required for an indictment or the quantity
of evidence required to obtain a conviction. Janecka v. State, 739 S.W.2d 813,
822–23 (Tex. Crim. App. 1987). An affidavit that identifies a named informant will
support issuance of a warrant if the information provided is sufficiently detailed to
suggest direct knowledge by the informant. See Matamoros v. State, 901 S.W.2d 470,
478 (Tex. Crim. App. 1995). 
          In this case, Champoux was named as the informant. Reynolds viewed her
videotaped statement and spoke with her by telephone several times. She told
Reynolds many details, which she said appellant told her, of the murder, including the
name of the apartment complex where Mayes was shot, the fact that Mayes was on
a bicycle, the fact that two juveniles and an adult were watching from a balcony, the
name of appellant’s friend (whom she referred to as “New Jersey” rather than
“Jersey”), the fact that appellant changed into a black hooded sweatshirt and black
pants before going after Mayes, and Mayes’s statement, “no dog, don’t shoot me,”
before appellant shot him. 
          We hold that Reynolds’s affidavit was sufficiently detailed to show probable
cause to issue an arrest warrant for appellant. 
          We overrule appellant’s first issue. 
Sufficiency of the Evidence
          In his second point of error, appellant contends that the evidence is insufficient
to support his conviction because (1) the State did not prove that his statement was
voluntary, (2) the State did not prove that he intentionally caused the death of Mayes,
and (3) Champoux is not a credible witness. Because appellant makes only a general
sufficiency-of-the-evidence complaint and cites only a legal-sufficiency standard of
review, we construe appellant’s complaint to be a legal-sufficiency complaint. See
Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996) (stating that court of
appeals may review factual sufficiency “if it is properly raised”). 
Standard of Review
          In reviewing the evidence on legal-sufficiency grounds, we view the evidence
in the light most favorable to the verdict to determine “whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); King
v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The jury is the exclusive judge
of the facts, the credibility of the witnesses, and the weight to be given to the
witnesses’ testimony. Jaggers v. State, 125 S.W.3d 661, 671 (Tex App.—Houston
[1st Dist.] 2003, pet. ref’d). The jury may believe all, some, or none of any witness’s
testimony. Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). This
standard of review applies to both direct and circumstantial evidence. King, 29
S.W.3d at 565. 
Involuntary Statement
          Appellant first argues that his statement was involuntary and that, without his
statement, the evidence is insufficient to meet the standard of “beyond a reasonable
doubt.” Having held, under appellant’s first point of error, that the State has carried
its burden to show that appellant’s statement was voluntary, we need not revisit this
issue. 
Unintentional Shooting
          Second, appellant contends that his statement, if voluntary, clearly shows that
he did not intend to kill Mayes. His statement said, 
I was going to go back and scare the guy, point the gun at him or maybe
even fire a shot up in the air. . . .
 
As I rounded the corner of the next building the boy happened to
be right there on the bike coming towards me. It kind of startled me and
I pulled the pistol out of my pocket and shot 2 times. I wasn’t trying to
shoot him and was trying to aim kind of up in the air. As soon as I shot
I turned and ran back the way I came, I didn’t see the guy fall or get off
his bike or anything. The only people I saw were a couple of little kids
up on the balcony, and I didn’t see them until after I had already shot
and was running away. 

          A person commits murder if he (1) intentionally or knowingly causes the death
of an individual or (2) intends to cause serious bodily injury and commits an act
clearly dangerous to human life that causes the death of an individual. Tex. Pen.
Code Ann. § 19.02 (b)(1), (2) (Vernon 2003). Intent and knowledge are fact
questions for the jury and are almost always proven through evidence of the
circumstances surrounding the crime. Childs v. State, 21 S.W.3d 631, 635 (Tex.
App.—Houston [14th Dist.] 2000, pet. ref’d). We may infer intent from the accused’s
words and conduct, and when death results from a deadly weapon fired at close range,
the law presumes an intent to kill. Id. 
          In this case, appellant retrieved his pistol and sought out Mayes. Appellant
then shot Mayes two times. Stafford, watching from a balcony, testified, that the man
with the gun shot Mays once, started to leave, then turned back and shot a second
time. She said, “It looked like he was - - he did it on purpose, like he wanted to shoot
him . . . .” Champoux testified that appellant told her that he shot Mayes because “the
kid disrespected his friend at the store . . . that he shot and killed the kid . . . .” 
          Appellant argues that we should discount Stafford’s testimony because she was
only 11 years old at the time of the shooting. Appellant also contends that
Champoux’s testimony lacks credibility because she is a convicted felon who
probably received clemency from an Oregon prosecutor in exchange for her help in
this case. 
          Although it is true that Champoux had been convicted in Oregon of possession
of a controlled substance, there is no evidence that she was under indictment at the
time of appellant’s trial or that she received any benefit as a result of her testimony. 
Furthermore, she was questioned under oath by appellant’s counsel regarding her
conviction and whether there were any outstanding charges against her or any
preferential treatment was given to her in return for her testimony. She testified that
there was none. Appellant’s contention is sheer speculation. 
          The credibility of the witnesses and the weight to given to their testimony are
for the jury to determine. Jaggers v. State, 125 S.W.3d at 671. Viewing the
evidence in the light most favorable to the verdict, we conclude that the evidence is
legally sufficient to support the verdict. Accordingly, we overrule appellant’s second
point of error.
CONCLUSION
          We affirm the judgment.
 
 
                                                             Sam Nuchia
                                                             Justice

Panel consists of Justices Nuchia, Keyes, and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).