**Joe Earl DARDEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 60576.**

Court of Criminal Appeals of Texas, Panel No. 2.

March 17, 1982.

**48**

Frank W. Sullivan, III, Earl E. Bates, Jr., Fort Worth, for appellant.

Tim Curry, Dist. Atty., & William Kane, Jack Strickland, Howard Borg & C. Chris Marshall, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and TOM G. DA-VIS and CLINTON, JJ.

## OPINION

TOM G. DAVIS; Judge.

Appeal is taken from a conviction for aggravated robbery. After finding appellant guilty, the jury assessed punishment at 25 years.

Appellant was convicted of the aggravated robbery of Sidney Castle at a Quik Sak store in Fort Worth on February 14, 1977. Castle died as a result of gunshot wounds he received during the course of the robbery. Appellant was sixteen years of age at the time of the offense.

In his second through seventh grounds of error, appellant contends the court erred in admitting six exhibits into evidence. The exhibits consist of a reel of developed motion picture film and five photographs. The photographs represent enlargements of five frames from the motion picture film. Appellant maintains the exhibits were inadmissible "because there was no chain of custody." He urges that "it is impossible . . . to remove the doubt [of tampering] when no one can say where the film was kept or how it was handled after it was removed from the store camera."

Norman Richard testified that he was a sales manager with Armco Burglar Alarm System. He stated that the Quik Sak store was equipped with a motion picture camera which was mounted on the wall and aimed at the cash register. Richard related that the camera took two pictures per second and was activated when a money clip was removed from the cash register. Since the camera was not in constant use, a reel of film would often last for several days. Finally, Richard related that employees were to check the system at some time during their eight hour shifts. Such a check would be made by the employee removing the money clip and then listening for the motor of the camera to start running.

Janet Buckner testified that she was a clerk at the Quik Sak. She had worked the eight hour shift which ended when Castle reported for work at 8:00 p. m. on February 13, 1977. After viewing the developed motion picture film, Buckner recognized herself as having been photographed by the camera. She stated that she had been photographed when she tested the camera at 7:30 p. m. on February 13.

Officer Charles Coleman, of the Fort Worth Police Department, was the first officer to arrive at the scene of the offense. The officer stated that he arrived at the store at 3:05 a. m. on February 14. Coleman found Castle behind the counter of the store. After viewing the developed motion picture film, Coleman recognized himself as having been photographed upon entering the store and examining the victim for any sign of life.

The record reflects that between the time that Buckner and Coleman appear on the film, the film depicts two individuals standing at the counter of the store. One of the individuals is shown to be holding a firearm which is pointed in the direction of the victim's body. Appellant was identified as the man holding the firearm at the counter.

Dan Eudaley testified that he was a photographer for the Fort Worth Police Department. Eudaley stated that he made five photographs from the developed motion picture film. Each photograph represents a different frame of the film. He testified that each of the photographs fairly and accurately depicted a frame from the film in that they were exact reproductions except for size and color. Eudaley further stated that in his examination of the reel of motion picture film, he could find no evidence of modification, alteration, splicing or tampering.

▪ Motion pictures and photographs are admissible provided there is proof of

their accuracy as a correct representation of the subject at a given time and they have material relevance to a disputed issue. *Roy v. State*, 608 S.W.2d 645 (Tex.Cr.App.); *Williams v. State*, 461 S.W.2d 614 (Tex.Cr.App.). The witness who verifies such exhibits need not be the photographer nor need he have any knowledge concerning the way in which the photograph was made. *David v. State*, 453 S.W.2d 172 (Tex.Cr.App.).

Appellant's contention in these grounds of error centers upon the absence of evidence concerning the development process of the motion picture film. In *Hammett v. State*, 578 S.W.2d 699, this Court stated that if an offered item of evidence is of such a nature as not to be readily identifiable, or to be susceptible to alteration by tampering or contamination, sound exercise of the court's discretion may require a more elaborate foundation for admission than an item which is readily identifiable.

 We find the court properly admitted the photographs and motion picture film. Such items were readily identifiable and admissible after the proper predicate was established by those who were depicted on the film. Just as we have held that the photographer need not be the verifying witness, we likewise hold that there is no requirement for the State to show the details of the development process in order for photographs or motion pictures to be admissible. Appellant's second through seventh grounds of error are overruled.

 In his first ground of error, appellant contends the court erred in admitting his written statement into evidence. Initially, he contends the statement was inadmissible because he was not properly warned.

Appellant was arrested at his home shortly before midnight on February 15, 1977. At the time of his arrest, he was given his warnings by Officer J. R. Owens of the Fort Worth Police Department.

Following his arrest, appellant was taken before the Honorable Robert Ashmore, Jus-

tice of the Peace for Precinct 1, Place 2, Tarrant County. Due to appellant being a juvenile, he was given the following warnings [1] by Ashmore:

"(1) You have the right to remain silent and not make any statement at all, and any statement you make may be used in evidence against you;

"(2) You have the right to have an attorney present to advise you either prior to any questioning or during the questioning;

"(3) If you are unable to employ an attorney, you have the right to have an attorney to counsel with you prior to or during any interviews with peace officers or attorneys representing the State;

"(4) You have the right to terminate the interview at any time;

"(5) If you are 15 years of age or older at the time of the violation of a penal law of the grade of felony, the Juvenile Court may waive its jurisdiction and you may be tried as an adult."

Appellant was then questioned by Officer D. R. Thompson of the Fort Worth Police Department. Approximately ten hours later, appellant and Thompson appeared before the Honorable Robert Bowen, Judge Pro Tem for the Fort Worth Municipal Courts. After receiving the same warnings from Judge Bowen which had been given by Judge Ashmore, appellant signed the statement which was admitted into evidence. Thompson stated that he did not administer any warnings to appellant before taking the statement from him.

It is thus appellant's contention that the Sec. 51.09(b)(1), supra, warnings provided by the Family Code are not sufficient to satisfy Art. 38.22, V.A.C.C.P., and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Specifically, appellant urges that the warnings are insufficient because the accused juvenile is not informed that if he is unable to employ counsel, a lawyer will be appointed for him.

1. The warnings are provided for by V.T.C.A. Family Code, Sec. 51.09(b)(1).

In *Meza v. State*, 577 S.W.2d 705 (Tex.Cr. App.), the juvenile defendant urged that Sec. 51.09(b)(2), supra, is unconstitutional because it permits police to take oral confessions without *Miranda* warnings. The contention was rejected after this Court held that Sec. 51.09, supra, does not dispense with the necessity of *Miranda* warnings. Thus, the confession in the instant case would be admissible only if it was shown to have been taken in compliance with Art. 38.22, supra, and *Miranda.*

Since Thompson did not warn appellant at the time of taking the statement, the State sought to show compliance with Art. 38.22, supra, under the following provision:

"Sec. 2. No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:

"(a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code . . ."

Art. 15.17(a), V.A.C.C.P. provides as follows:

"In each case enumerated in this Code, the *person* making the arrest shall without unnecessary delay take the person arrested or have him taken before some magistrate of the county where the accused was arrested. The magistrate shall inform in clear language the person arrested of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during any interview with peace officers or attorneys representing the state, of his right to terminate the interview at any time, *of his right to request the appointment of counsel if he is indigent and cannot afford counsel,* and of his right to have an examining trial. He shall also inform the person arrested that he is not required to make a statement and that any statement made by him may be used against him. The magistrate shall allow the person arrested reasonable time and opportunity to consult counsel and shall admit the person arrested to bail if allowed by law." (Emphasis added).

The statement signed by appellant contains the warnings which he received from Judge Ashmore under Sec. 51.09(b)(1), supra. One of the warnings on the face of the statement recites that appellant was warned: ". . . that if I am unable to employ an attorney, I have the right to have an attorney to counsel with me prior to or during any interview with peace officers or attorneys representing the State."

In *Eddlemon v. State*, 591 S.W.2d 847 (Tex.Cr.App.), the defendant maintained that the warnings he received were insufficient under Art. 38.22, supra, because they did not track the statutory language of the statute. The Court rejected the contention and stated:

"Appellant claims that this warning failed to comply with Art. 38.22 because, in mentioning the right to appointment of a lawyer, the warning does not track the statutory repetition of the right to have such appointed counsel 'prior to or during any questioning' and further includes a clause, 'by proper judicial authority,' which is not in the statute. "We hold that appellant was advised of his rights in full compliance with Art. 38.22. All of the rights listed in that statute were included in the warning given to appellant by the police. Appellant, an adult with demonstrable experience with and knowledge of criminal procedure, does not claim that he was confused or misled and never asserts that he did not understand his rights. A warning which conveys, on 'the face of the statement' and in only slightly different language, the exact meaning of the statute is sufficient to comply with the statute. Appellant's position attacks the statement 'due to the scrivener's error—technical noncompliance with the statute. It reflects the feeling that the requirements of *Miranda* have become more a ritualistic formalism than a means to protect the underlying constitutional privilege.' Bu-

bany, *The Texas Confession Statute: Some New Wine in the Same Old Bottle,* 10 Tex.Tech.L.Rev. 67, 73 (1978); see also id. at 76. The privilege was protected; we reject appellant's position." Id. at 850.

The warning actually given informed appellant that if unable to employ counsel, he had a right to have an attorney counsel with him. The Art. 15.17, supra, warning states that the accused is to be informed of the right to request the appointment of counsel if he is indigent. We conclude that the warning actually given, although in slightly different language, conveyed the same meaning of the warning contained within Art. 15.17, supra, and was therefore sufficient to satisfy Art. 38.22, supra. We further find that the warning given to appellant satisfied the *Miranda* requirement that he be informed that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires.

Appellant further contends the confession was inadmissible because he did not knowingly and voluntarily waive his rights. At the conclusion of the suppression hearing, the court entered findings which recite appellant knowingly waived his constitutional rights and voluntarily gave the statement to authorities.

Judge Bowen testified that when appellant signed the confession, he indicated he was doing so voluntarily. When appellant received his Sec. 51.09, supra, warnings from Judge Ashmore, he indicated he understood the warnings. Finally, Thompson stated that during questioning, appellant responded in the affirmative when asked whether he understood the warnings from Judge Ashmore. Thompson further stated that appellant was not threatened, coerced or promised anything in return for giving authorities the statement.

Appellant testified that he did not voluntarily give the statement in that he did not understand the warnings he had received. He further stated that he was forced to sign the statement. Finally, appellant related that during the interrogation, the authorities "put words in his mouth."

■ The judge at the Jackson v. Denno hearing is the sole judge of the weight and credibility of the witnesses. He may believe or disbelieve all or any part of any witness' testimony. *Hughes v. State,* 562 S.W.2d 857 (Tex.Cr.App.), *Myre v. State,* 545 S.W.2d 820 (Tex.Cr.App.). The evidence raised issues of fact as to waiver of counsel and alleged acts of coercion by Thompson. We find that there is evidence to support the court's finding that appellant waived counsel and that Thompson did not act improperly in taking appellant's statement. We conclude that under the totality of the circumstances the evidence supports the court's finding that appellant's confession was freely and voluntarily given after he had been fully appraised of his rights and affirmatively waived those rights. See *McKittrick v. State,* 541 S.W.2d 177 (Tex. Cr.App.).

■ Finally, appellant contends the court erred in admitting his statement because the statement was obtained while he was in custody in violation of V.T.C.A. Family Code, Sec. 52.02(a)(3). That statute provides that upon taking a child into custody, he is to be taken without unnecessary delay to a detention facility designated by the juvenile court.

A review of the record fails to show that among his many objections, appellant sought to suppress the confession on the basis that it was taken while he was illegally detained under Sec. 52.02(a)(3), supra. Appellant's contention on appeal thus differs from his trial objection and presents nothing for review. *Carrillo v. State,* 591 S.W.2d 876 (Tex.Cr.App.); *Stutes v. State,* 530 S.W.2d 309 (Tex.Cr.App.).

No error is shown in the court admitting the statement. Appellant's first ground of error is overruled.

In his eighth ground of error, appellant contends the court erred in failing to grant a mistrial due to improper jury argument. He maintains the argument was improper as being outside the record.

The record reflects that the victim's body was discovered by Steven Leath at 2:45 a. m. The complained of argument is as follows:

"... Suppose that Steve Leath would have had the bad fortune to walk in there thirty minutes earlier when he was buying his Dr. Pepper? Don't you suppose he would have gunned down Steve Leath?"

The court sustained appellant's objection to the complained of argument and instructed the jury to disregard the prosecutor's comment. Appellant's motion for mistrial was denied.

■■■ In order to be appropriate, jury argument must fall within the categories of (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Campbell v. State*, 610 S.W.2d 754 (Tex.Cr.App.). The complained of argument in the instant case was improper because it asked the jury to speculate as to the possibility of an extraneous offense. However, we conclude the court's instruction to disregard was sufficient to cure the error. *Shippy v. State*, 556 S.W.2d 246 (Tex.Cr.App.); *Miller v. State*, 566 S.W.2d 614 (Tex.Cr.App.). Appellant's eighth ground of error is without merit.

■■■ In his ninth ground of error, appellant contends the court erred in overruling his objection to improper jury argument by the prosecutor. The complained of argument is as follows:

"... I will tell you this, ladies and gentlemen, if he had done it six months later it would have been capital murder and that's a death penalty offense in the State of Texas.

"He has already received the mercy of the law. The mercy of the law says thank God you were six months younger than what the law said you could be

---

1. All emphasis is mine unless otherwise indicated.

2. The confession finally admitted in evidence is the *third* statement shown to have been made from the time of his arrest shortly before midnight February 15 until he appeared in the

otherwise it would have been a death penalty offense—"

Prior to the complained of argument, appellant's counsel stated:

"It happened. He was sixteen years old and it happened. And I promise you that neither Mr. Bates nor I have anything but the deepest compassion and feeling about the death of Sidney Castle. But I don't think there is a one of us who can say that we had the judgment and the knowledge and the understanding and the control over our actions at sixteen that we have today.

"Who, among us, if things had been just a little bit different, at least once in our life, might have stumbled? Who, among us, at the age of sixteen or fifteen or seventeen could not have made a wrong turn?

" ...

"If he has a chance, if society has a chance to turn this kid around, it's not in the walls of prison."

In light of the appellant's argument, the prosecutor's response thereto does not constitute reversible error. *Alejandro v. State*, 493 S.W.2d 230 (Tex.Cr.App.).

The judgment is affirmed.

CLINTON, Judge, concurring.

The appellant contends under his first ground of error that the confession admitted into evidence before the jury is "the fruit of an illegal *detention*," [1] proscribed by V.T.C.A. Family Code, § 52.02(a). The majority disposes of his contention by saying nothing is presented for review because, among his many objections to the confession, such alleged illegal detention was not voiced.[2] The reason is apparent from the briefs of the parties—even now neither has traced the odyssey of appellant beginning at the residence of his kin about midnight.

---

office of Municipal Court Judge Pro Tem Bowen about midday February 16, 1977. Although there was much testimony about them during the hearing on motion to suppress, the State did not tender the first two statements to the jury.

I address the contention in the interest of justice.

Officer J. R. Owens, an officer in the radio patrol division, was directed to go to that residence and to arrest appellant, presumably because of his familiarity with the neighborhood and past acquaintance with appellant, himself. Arriving there, he found appellant in a state of undress, and accompanied him into a bedroom. Having seen the motion picture film of actions of the figures shown, Owens knew that the one thought to be appellant was wearing a sweater with a distinctive design. Remarking to appellant that "it was fairly cold outside and he might need to get a coat," Owens watched as appellant extracted from a pile of clothing in a nearby chair *the* sweater, and donned it. They then drove to the Public Safety and Courts Building at 1000 Throckmorton, which also housed the Fort Worth Police Department.

Assigned to assist in the investigation of the robbery, Detective D. R. Thompson had viewed the film with Officer Owens. When he first saw appellant at "the police station" appellant was wearing a sweater. Since it appeared to be the same sweater shown in the film, Detective Thompson gave the instructions to take the sweater from appellant, telling the officers "when they did take him to the Juvenile Detention Center, they take [all] clothing . . . to retain it for evidence purposes." Officer Owens took appellant to the center "somewhere about 12:30 or 1:00"—some thirty minutes after arresting him and escorting him to "the police station." Appellant was taken to the center "where he changed clothes," and was then brought back to Detective Thompson; the clothes were tagged and placed in the crime lab as evidence.[3]

Every written statement, two of them, and the confession ultimately admitted in evidence came thereafter.

V.T.C.A. Family Code, Title 3, Delinquent Children and Children in Need of Supervision, is to be construed to effectuate the public policies set forth in § 51.01. Section 52.02(a) provides:

"A person taking a child into custody, without unnecessary delay and without first taking the child elsewhere, shall do one of the following:

\* \* \* \* \* \*

(3) bring the child to a detention facility designated by the juvenile court. . . ."

Section 52.02(b) mandates that such person "shall promptly give notice of his action and a statement of the reason for taking the child into custody" to the child's parent, guardian or custodian and the office or official designated by the juvenile court.

The record is not too clear as to the precise place within the Public Safety and Courts Building Owens first took appellant[4]—except that he definitely was not confined in a tank, holdover or other cell. But we can be certain that interrogation that formally began after 1:25 a. m., took place in a room of the Homicide Office in the police department; it resulted in two statements, the last being completed at 3:33 a. m., followed by a magistrate's warning at 3:47 a. m. Then appellant was returned to the Juvenile Detention Center.

I believe it cannot fairly be found that what occurred here during the early morning hours of February 16, 1977, effectuated the public policies prescribed in Title 3 of the Family Code; I further agree with the opinion expressed in *Matter of D.M.G.H.*, 553 S.W.2d 827, 828 (Tex.Civ.App.—El Paso 1977, no writ history) in similar circumstances, that applicable provisions of § 52.-02 were not complied with in the handling of appellant, this delinquent juvenile.[5]

---

3. The above recitation is drawn from the record testimony of Officer Owens and Detective Thompson, e.g., at pages 77–78, 180, 181, 183.

4. Owens believed it was the crime lab area.

5. The State of Texas began to struggle with problems in dealing with delinquent children

*vis a vis* its criminal justice system as early as Acts 1907, 30th Leg., ch. 65, p. 137, and reported cases reveal continuing tensions between the thrust of advocates for more "rights" for juvenile offenders and the parry by advocates of "rights" of society. See, e.g., complaints of

However, his confession aside, appellant is starkly shown on film committing the offense for which he was convicted. Accordingly, I concur in the judgment of the Court.

inadequacies advanced in *Gordon v. State*, 89 Tex.Cr.R. 59, 228 S.W. 1095, 1096 (1920, 1921) and some aspects of the historical record traced in *Ex parte Morgan*, 595 S.W.2d 128, 133–134 (Tex.Cr.App.1980) (Dissenting Opinion) and in *Ex parte Trahan*, 591 S.W.2d 837 (Tex.Cr.App.1980). The last major legislative effort was made in 1973, when Title 3 was added to the Family Code, and its public purposes were stated in § 51.01, supra. So long as the Legislature prescribes constitutional procedures pertaining to these matters "the State must adhere to its requirements," *Matter of H. S., Jr.*, 564 S.W.2d 446, 448 (Tex.Civ.App.— Amarillo 1978), and, it has been said, "Police officers, courts and others involved in the handling of juveniles are bound to comply with the detailed and explicit procedures enacted by the Legislature in that [Family] Code," *Matter of D.M.G.H.*, supra, at 828. Still, not every failure of compliance revealed in a subsequent criminal prosecution will necessarily constitute such an infringement as to warrant a new trial.