Affirmed and Opinion filed August 7, 2003









Affirmed and Opinion filed August 7, 2003.

                                                                                                                                                            

In The

 

Fourteenth Court of Appeals

____________

 

 NO.14-02-00455-CR 

 NO.14-02-00456-CR

____________

 

SHAWN THOMAS MASON,
Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 



 

On
Appeal from the 176th District Court

Harris County, Texas

Trial
Court Cause Nos. 872,252 & 872,251

 



 

O
P I N I O N

Following
a jury trial, appellant Shawn Thomas Mason was convicted of two felonies:
aggravated sexual assault of a child[1]
and indecency with a child. and indecency with a child.[2]  at Tex.
Pen. Code Ann. ' 21.11(a) Vernon 2003)). 
Asserting four points of error, appellant contends his convictions
should be reversed.  We affirm.








FACTUAL
AND PROCEDURAL HISTORY

Appellant,
a 28-year-old male, and his wife lived together with complainant K.R., the wife=s
five-year-old daughter.  In February,
2001, K.R. approached her mother and disclosed that appellant had made K.R.
take baths with him, had touched K.R.=s Aprivate areas,@ had shown K.R. pornography on a computer, and had attempted to
put his Aprivate
area@
into K.R.

When
appellant=s wife confronted appellant, he denied everything and claimed
K.R. was lying.  Nevertheless, appellant=s
wife went to the police and reported the alleged abuse.  As a result of the report, Captain Gay
Dickerson of the Katy Police Department set up an interview and medical
examination of K.R. Complainant=s physical exam neither corroborated nor refuted K.R.=s
story.  

During
her investigation, Dickerson took a written statement from K.R.=s
mother and asked appellant to appear at the police station to give Ahis
side of the story.@  Appellant agreed to do
so, arriving the next morning with his father. 


While
appellant=s father waited in a hallway, Dickerson and a fellow police
officer, Detective Julius Belton, interviewed appellant in Dickerson=s
office.  They read appellant his rights,
asked appellant for a written statement, and tried to obtain a confession.  Although appellant initially said K.R. was
lying and denied complainant=s claims, he later signed a written statement admitting he had
exposed himself to K.R. and had sexual contact with her.








Appellant
now denies his statement was voluntary. 
In his brief, he claims his confession was obtained through deception
and physical force.  First, appellant
asserts Belton told him that he (Belton) was a pedophile and so understood how Abeing
placed in that situation@ could lead to improper sexual behavior.  Next, appellant asserts Dickerson lied to him
when she (1) told appellant his father could not be present during the
interview, and (2) told appellant that complainant=s
physical examination showed Apenetration@ when in fact she knew this to be untrue.  Finally, appellant asserts Dickerson and
Belton told appellant that if he failed to cooperate with police, appellant
would go to prison Afor a long, long time,@ but if he cooperated with police, things would Ago
better@
for him.  Appellant also claims Belton pushed
him against a wall.

The
entire interview between police and appellant took approximately two hours and
no attorney was present.  Appellant=s
father claims that when Dickerson first approached him about interviewing his
son, the father asked if appellant needed an attorney and Dickerson said Ano.@  The father also claims that when he attempted
to accompany his son into Dickerson=s office for his meeting with police, Dickerson told him to
wait outside because the case involved a juvenile and she could not disclose
certain details in his presence. 

Upon
receipt of appellant=s confession, the State charged appellant with two
offenses:  aggravated sexual assault with
a child (cause number 872,251) and indecency with a child (cause number
872,252).  Prior to trial, appellant
filed a motion to suppress his written statement.  The trial court held a suppression hearing
outside the presence of the jury, at which only Dickerson and a notary public
testified.  The trial court denied
appellant=s motion to suppress.

In
a consolidated trial, a jury found appellant guilty of both offenses.  It assessed punishment at thirty-five years
in the Texas Department of Criminal Justice Institutional Division (TDCJ-ID) in
cause number 872,251, and at twenty years in the TDCJ-ID in cause number
872,252, with the sentences to run cumulatively.

This
combined appeal arises from those convictions.

ISSUES
ON APPEAL








Asserting
four points of error, appellant contends the trial court committed reversible
error during voir dire by allowing the State to commit the jury panel to
(1) convict appellant in the absence of DNA or medical evidence, (2) convict
appellant in the absence of testimony by the child complainant, and (3)
consider probation instead of acquittal by invoking hypothetical fact patterns.  Additionally, he claims the trial court
committed reversible error by (4) failing to suppress appellant=s
written confession because the statement was involuntary and obtained through
trickery.

I.   VOIR DIRE

In
his first through third points of error, appellant asserts the trial court
allowed the State to ask the venire three improper commitment questions.   We disagree.

A.      Standard of review

The
trial judge may impose reasonable restrictions on the exercise of voir dire examination.  Boyd v. State, 811 S.W.2d 105, 115 (Tex. Crim. App. 1991).  Indeed, the
trial court may limit voir dire when a question commits a venire member
to a specific set of facts.  Ford v.
State, 14 S.W.3d 382, 390 (Tex. App.CHouston [14th Dist.]
2000, no pet.). A trial judge may not, however, restrict proper questions that
seek to discover a juror=s views on relevant issues. 
McCarter v. State, 837 S.W.2d 117, 121B22
(Tex. Crim. App. 1992).  

Although
voir dire examination is largely within the sound discretion of the
trial court, a trial court Aabuses its discretion when its denial of the right to ask a
proper question prevents determination of whether grounds exist to challenge
for cause or denies intelligent use of peremptory challenges.  Babcock v. Northwest Mem=l
Hosp., 767 S.W.2d 705, 709 (Tex. 1989); see
also Tex. R. Civ. P. 228
(defining challenge for cause).

To
obtain a reversal, the complaining party must show that the trial court abused
its discretion and the error affected appellant=s substantial rights.  See
Tex. R. App. P. 44.2(b).  A substantial right is affected where the
error causes a substantial or injurious effect on the jury=s
verdict.  Morales v. State, 32
S.W.3d 862, 867 (Tex. Crim.
App. 2000). 

B.      Discussion








Appellant
claims the trial court allowed the State to ask three improper commitment
questions during voir dire.  A
commitment question is one that Acommits a prospective juror to resolve, or to refrain from
resolving, an issue a certain way after learning a particular fact.@  Standefer v. State, 59 S.W.3d 177, 179
(Tex. Crim. App. 2001).  For a commitment
question to be proper, one of the possible answers to the question must give
rise to a valid challenge for cause.  Id.
at 182. 

The
inquiry for determining an improper commitment question, therefore, involves
two steps: (1) a determination of whether the question is indeed a commitment
question; and (2) a determination of whether the question includes factsCand
only those factsCthat lead to a valid challenge for cause.  Id. at 182.  If the answer to the first determination is Ayes@
and the answer to the second is Ano,@ the proposed question is an improper commitment question and
the trial court should not allow it.  Id. at 182B183.

Here,
appellant complains of three questions. 
First, he asserts the State improperly committed venire members to
convict under facts presented by asking: 

(1)       A[T]he
law does not require me to present DNA or medical evidence . . . before you can
convict . . . As long as you have other evidence beyond a reasonable doubt, the
law authorizes a conviction . . . [W]ho still needs [DNA or medical evidence],
who cannot follow the law?@[3]

(2)       A[W]hat
if I=m able to prove
my case to you beyond a reasonable doubt through other . . . types of evidence,
but the child [herself] cannot [testify or articulate the offense?] . . . Is
there anyone here who, even if they felt I proved my case through other means
or evidence, cannot convict unless they hear it out of the mouth of the child
complainant in court?@

Appellant
also complains the State improperly committed venire members to facts analogous
to his case by asking a question that built on a Ahypothetical@ posed earlier by the trial court:








(3)       AWhat
if you=re on a jury
and, after seeing the evidence, you conclude that the 13-year-old [complainant
described earlier by the trial court] was the instigator   . . . [t]hat they in essence took advantage
of a 17-year-old  . . . Did everyone
raise their hand earlier [who said they] can=t
even consider probation in the appropriate case, in a case where it makes
sense?@

 

The
State asserts the three questions were not commitment questions or,
alternatively, that they were not improper, because they could logically
lead to valid challenges for cause.  We
agree with the State=s second argument.

1.       Were the State=s
questions Acommitment questions@?

A
commitment question is one that commits a prospective juror to resolve, or to
refrain from resolving, an issue a certain way after learning a particular
fact.  See Standefer, 59 S.W.3d at
179, 183. (determining a question was a commitment question when defense
counsel sought to ask venire members if they A[w]ould . . . presume someone guilty if he or she refused a
breath test on their refusal alone?@).

Here,
the State=s questions required prospective jurors to:

(1)       resolve
the issue of whether they could convict appellant where there was no DNA and
medical evidence presented;

(2)       resolve
the issue of whether they could convict appellant where the child complainant
did not testify; and

(3)       resolve
the issue of whether they could give someone probation where the child
complainant was the one who initiated the improper sexual encounter.

 








Because
all three questions required venire members to commit to convicting or
sentencing defendant under a certain set of facts, we find all three questions
were Acommitment
questions.@  See id. at 180 (finding question that asked A[I]f
the victim is a nun, could [the prospective juror] be fair and impartial?@
was non-commitment question, while question that asked ACould
you consider probation in a case where the victim is a nun?@
was commitment question) (emphasis added); see also Rivera v. State, 82
S.W.3d 64, 66B67 (Tex.
App.CSan Antonio 2002, pet. ref=d) (holding the following to be a proper commitment question: A[W]ould
you automatically disbelieve [defendant] simply because he is the defendant?@).

Whether
the three questions were improper, however, requires further inquiry.

2.       Did the State=s
questions lead to valid Achallenges for cause
?@

After
a reviewing court determines that a question is a commitment question, the
court=s
next step is to determine whether the question includes facts (and only those
facts) that lead to a valid challenge for cause.  Standefer, 59 S.W. 3d at 183.  Here, we conclude each of the State=s
three questions meets this test.

A
venire member may be challenged for cause if (1) he possesses a bias or
prejudice in favor of or against the defendant; (2) he possesses a bias against
a phase of the law upon which the State or the defendant is entitled to rely;
or (3) he has already decided the defendant=s guilt or punishment.  Barajas v. State, 93 S.W.3d 36, 39 (Tex. Crim. App. 2002); see Tex.
Code Crim. Proc. Ann. art. 35.16(a)(9), (10), (b)(3), (c)(2) (Vernon
1989 & Supp. 2003).

Consistent
with the second basis for a challenge for cause set forth above, the State may
properly challenge a juror for cause when the juror would hold the State to a
higher standard than Abeyond a reasonable doubt.@  Coleman v. State,
881 S.W.2d 344, 360 (Tex.
Crim. App. 1994).  Qualified prospective jurors must also be
willing to consider the full range of punishment applicable to an offense
submitted for their consideration.  Banda
v. State, 890 S.W.2d 42, 55 (Tex. Crim. App.
1994).  The inability to do so
constitutes a bias or prejudice against the law and renders a prospective juror
challengeable for cause.  Von Byrd v.
State, 569 S.W.2d 883, 891 (Tex. Crim. App. 1978).








Individual
veniremen are not challengeable for cause, however, merely for setting their
threshold for reasonable doubt higher than the minimum required by law to
sustain a jury verdict.  Garrett v.
State, 851 S.W.2d 853, 860 (Tex. Crim. App. 1993)
(venireman who could not be convinced beyond a reasonable doubt on the
testimony of a single eyewitness was nevertheless venireman who could follow
the law); Murphy v. State, No. 74145, C S.W.3d C, 2003 WL 21461680, at *2 (Tex. Crim. App.
June 25, 2002) (an individual juror must determine what proof beyond a
reasonable doubt means to him, for the law does not tell him).  If the State chooses to use a peremptory
challenge to remove such a person from the venire panel, it may do so.  See Garrett, 851 S.W.2d at 861.

Here,
the State asked three voir dire questions that it argues helped identify
potential jurors who would not convict or sentence appellant under a certain
set of circumstances.  The first question
identified veniremen who would not convict in the absence of DNA or medical
evidenceCeven
though Texas law does not require it and the State might otherwise prove its
case beyond a reasonable doubt.  The
second question identified veniremen who would not convict in the absence of
the victim=s testimonyCeven though Texas law does not require it and the State might
otherwise prove its case beyond a reasonable doubt.  Finally, the third question identified
veniremen who would not grant probation Ain a case where it makes sense@(such as when a minor initiates sexual contact)Ceven
though probation in such circumstances is allowed by law.

In response to the first question, four veniremen stepped forward
as persons who would have difficulty convicting in the absence of DNA and
medical evidence.  All subsequently
claimed they could follow the law and were left on the panel by the trial
court.  One was removed by the State
through a peremptory challenge; a second was removed by appellant.  

The State=s second questionCpertaining to victim testimonyConly identified one venireman.  After extensive questioning by the trial
court at the bench, he was removed by a State peremptory challenge.[4]  








The State=s third question identified two veniremen who admitted they
might have a problem with probating a person=s sentence even when the facts showed
the victim was the initiator.  Two others
surfaced during defense counsel=s questioning on the same topic.  After questioning the venire members further,
the trial court ultimately removed three for cause when they said they could
not follow the law and probate a defendant=s sentence under such facts.

Because
all three of the State=s voir dire questions could, and did, lead to
identification of  members of the venire
who might not be able to follow the law, and thus could be validly challenged
for cause, and because the State=s third question in fact led to three valid challenges for
cause, we conclude the trial court did not err when it permitted the State to
ask these questions.  Thus, we overrule
appellant=s first through third points of error.

II.   MOTION TO SUPPRESS

In
his fourth point of error, appellant asserts the trial court committed
reversible error by admitting appellant=s written confession because it was Arendered
involuntary by police coercion and conduct.@  We disagree.

A.      Standard of review








We
review a trial court=s decision to grant or deny a motion to suppress under an abuse
of discretion standard.  Villarreal v.
State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).  At a suppression hearing, the trial court is
the exclusive trier of fact and judge of the credibility of the witnesses.  See id.  An appellate court affords almost total
deference to a trial court=s determination of the historical facts supported by the
record, especially when the trial court=s fact findings are based on an evaluation of credibility and
demeanor.  Guzman v. State, 955
S.W.2d 85, 89 (Tex.
Crim. App. 1997).  The appellate court also affords the same
amount of deference to a trial court=s ruling on Aapplication of law to fact questions,@
also known as Amixed questions of law and fact,@ if the resolution of those questions turns on an evaluation of
credibility and demeanor.  Id.  The court reviews de novo those
questions not turning on credibility and demeanor.  Id. 
When there are no written findings in the record, an appellate court is
to view the evidence in the light most favorable to the trial court=s
ruling and uphold the ruling on any theory of law applicable to the case.  State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

In
determining whether the trial court=s ruling on a motion to suppress is supported by the record, we
generally consider only the evidence adduced at the hearing on the motion
unless the suppression issues have been consensually relitigated by the parties
during the trial on the merits.  Rachal
v. State, 917 S.W.2d 799, 809 (Tex. Crim. App.
1996); Dang v. State, 99 S.W.3d 172, 179 (Tex. App.CHouston [14th Dist.] 2002, no pet.).  Because
the parties in this case consensually relitigated the suppression issues at
trial, we will examine the trial evidence as well as the evidence from the
suppression hearing.

B.      Discussion

Once an accused
claims his confession is not voluntary, the burden shifts to the State to prove
its voluntariness.  See Farr v. State,
519 S.W.2d 876, 880 (Tex.
Crim. App. 1975).  A statement is involuntary if the record
reflects Aofficial, coercive conduct of such a nature@
that any statement obtained thereby is Aunlikely to have been the product of an essentially free and
unconstrained choice by its maker.@  Alvarado v. State,
912 S.W.2d 199, 211 (Tex.
Crim. App. 1995); see also
Colorado v. Connelly, 479 U.S. 157, 167, 107 S. Ct. 515, 522 (1986)
(coercive police activity is a necessary predicate to finding that a confession
is not voluntary within the meaning of Due Process Clause of Fourteenth
Amendment).  

The test is
whether the defendant=s will was Aoverborne@ by police coercion.  Guardiola
v. State, 20 S.W.3d 216, 223 (Tex. App.CHouston [14th Dist.]
2000, pet. ref=d); see Gomes v. State, 9 S.W.3d 373, 377B78
(Tex. App.CHouston [14th Dist.] 1999, pet. ref=d).  To make this
determination, a court looks at the totality of the circumstances.
Guardiola, 20 S.W. 3d at 223; see also Schneckloth v. Bustamonte,
412 U.S. 218, 226, 93 S. Ct. 2041, 2047 (1973); Gallegos v. Colorado,
370 U.S. 49, 55, 82 S. Ct. 1209, 1213 (1962); Creager v. State, 952
S.W.2d 852, 855 (Tex.
Crim. App. 1997); Darden v. State,
629 S.W.2d 46, 51 (Tex.
Crim. App. 1982).          








In the instant
case, appellant claims his written statement was involuntary because (1) the
police lied to him; (2) the police took advantage of the fact that he is a
pedophile; (3) the police did not allow him to have an attorney or his father
present at the time of questioning; (4) the police made implied promises of
leniency; (5) the police used physical force; and (6) the police interviewed
himCnot
to get at the truthCbut merely to obtain a confession.  

The State, on
the other hand, asserts appellant=s statement was voluntary because (1) appellant
voluntarily came to the police station; (2) appellant was allowed to leave
immediately after giving his statement; (3) appellant=s
interviewCfrom start to finishClasted only two hours; (4) appellant had his rights read to
him, and voluntarily waived those rights prior to giving his statement; (5)
appellant was given an opportunity for a break and enjoyed something to drink
during his interview; (6) appellant neither requested nor insisted upon having
an attorney or parent present during the interview; and (7) police never forced
or coerced appellant in any way.

After careful
review, we conclude the evidence supports a finding that appellant=s
statement was voluntary.

1.       The evidence does not suggest appellant=s
will was overborne by police lies or false promises of leniency.

 

Police  Deception

In determining
the voluntariness of a defendant=s written statement, police falsehoods are relevant.  Frazier v. Cupp, 394 U.S. 731, 739, 89 S.
Ct. 1420, 1425 (1969); Green v. State, 934 S.W. 2d 92, 99 (Tex. Crim. App. 1996).  However, A[t]rickery
or deception does not make a statement involuntary unless the method [is]
calculated to produce an untruthful confession or [is] offensive to due
process.@
Creager, 952 S.W.2d at 856; Jeffley v. State, 38 S.W.3d 847, 860 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d). Indeed, the effect of a lie Amust be analyzed in the context of all the circumstances of the
interrogation.@  Miller v. Fenton,
796 F. 2d 598, 607 (3rd Cir. 1986); accord Frazier, 394 U.S. at 737B39,
89 S. Ct. at 1424B25.








In appellant=s
motion to suppress, filed April 8, 2002,[5]
appellant asserted that his confession was the Aproduct of an unlawful search/seizure . . . [and was]
involuntary@; however, he offered no details as to why he felt his confession
was involuntary.  In appellant=s
brief, however, he asserts that his confession was involuntary because (1)
Dickerson allegedly lied to his father when she told him his father could not
accompany appellant during his interview because it was a juvenile case and she
could not talk about certain matters in the father=s
presence; (2) Dickerson lied to appellant when she alleged medical evidence
showed complainant=s vagina had been penetrated when in fact it did not; and (3)
Belton lied to appellant when he told him he was a pedophile.  

At appellant=s
suppression hearing, Dickerson and the notary public who notarized appellant=s
written statement testified for the State; no one testified for the
defense.  Dickerson testified that she
and Belton were the two officers who interviewed appellant and that there was a
portion of time during the interview when she stepped out to allow Belton to
interview appellant privately.  

Upon
questioning by the State, Dickerson testified that appellant=s
statement Aseemed like a voluntary decision on his part,@
that he seemed Ato be in a normal coherent frame of mind,@
that he seemed Asober,@ that she gave appellant a Miranda card and Aread
it off to him and he dated it and signed it in [two] places . . . of his own
free will,@ and that appellant had an opportunity to take a break and get
a drink, and that the entire interview took only two hours.  Additionally she testified that appellant was
allowed to leave Aof his own free will,@ that neither she nor Belton ever made promises of leniency if
appellant gave a statement, that she never heard appellant request an attorney,
that she never heard Belton deny appellant an attorney, and that she never
witnessed Belton making any physical threats. 
Appellant=s signed Miranda card and signed written statement were
admitted into evidence.








On
cross-examination, Dickerson denied ever having had a discussion with appellant=s
father regarding appellant=s need for an attorney. 
She admitted, however, that she told the father there were certain
matters she was not at liberty to discuss with him because it was a case
involving a juvenile, and that she told appellant the medical evidence showed
penetration when, in fact, it did not. 
The issue of Belton telling appellant he (Belton) was a pedophile was
not addressed at the suppression hearing.[6]

In his
appellate brief, appellant contends the trial court improperly denied his
motion to suppress because Dickerson lied about the reasons his father could
not accompany him during his interview; Dickerson lied about the medical
evidence showing penetration; and Belton lied about his being a pedophile.  We are unpersuaded. 

First,
appellant fails to point to any place in the record where the evidence demonstrates
Dickerson=s statement to appellant=s father regarding the confidentiality of certain information
was untruthful.  Indeed, under Texas law,
a Areport
of alleged or suspected abuse@ affecting the parent-child relationship is confidential
under the Texas Family Code; additionally, all Afiles, reports, records, communications, audiotapes,
videotapes, and working papers used or developed in an investigation@
are also confidential.  Tex. Fam. Code Ann. '
261.201(a)(1)B(2) (Vernon 2002). 

Next, appellant
fails to demonstrate how Dickerson=s exaggeration of the evidence against appellant rendered his
confession involuntary.  Indeed,
misstating Athe strength of the prosecution=s case@ against a defendant interferes Alittle, if at all,@ with a defendant=s Afree and deliberate choice@ of whether to confess.  See
Green, 934 S.W.2d at 100 (police officer=s statements that intentionally mislead defendant into
believing there was an eyewitness, when in fact there was no witness, did not
render confession involuntary).








Finally,
appellant fails to show how the evidence that police made misstatements caused
appellant=s will to be Aoverborne.@  Indeed, he presented no
evidence at his suppression hearing that Belton misled appellant about his
pedophilia;[7]
additionally, he presented no affidavits, depositions, or non-hearsay testimony
to support a claim that police prevarication was calculated to produce an
untruthful confession.

Because we
conclude the facts do not support a finding that appellant=s
will was overborne by police legerdemain, we conclude appellant=s
statement was not involuntary on the basis that Dickerson and Belton were not
completely truthful.  See e.g. Frazier,
394 U.S. at 739, 89 S. Ct. at 1425 (finding police misrepresentation that
defendant=s accomplice had confessed to be Ainsufficient@ to make an otherwise voluntary confession inadmissible); Gomes,
9 S.W.3d at 378B79 (finding appellant=s will was not overborne when police Aconvey[ed]
a sense of >inevitability= to appellant@ by telling her her polygraph results showed she lied when in
fact they did not).[8]

False Promises








Law enforcement
personnel also may not elicit confessions by making false promises.  Lynumn v. Illinois, 372 U.S. 528, 534, 83
S. Ct. 917, 920 (1963) (holding defendant=s will was overborne by police promise not to take away
children if defendant confessed); see also Gipson v. State, 844
S.W.2d 738, 739B40 (Tex.
Crim. App. 1992) (affirming court of
appeals=
decision holding improper an officer=s implied inducement to defendant that his confession might be
used for him or on his behalf).   Indeed,
a confession must be free and voluntary and must not be obtained by any direct
or implied promises, however slight.  Bram
v. United States, 168 U.S. 532, 542, 18 S. Ct. 183, 187 (1897).

A statement is
involuntary and thus inadmissible if it is induced by a promise that is (1) of
some benefit to the defendant; (2) positive; (3) made or sanctioned by someone
in authority; and (4) of such a character as would likely influence the
defendant to speak untruthfully.  Sossamon
v. State, 816 S.W.2d 340, 345 (Tex. Crim. App.
1991); Bordman v. State, 56 S.W.3d 63, 69 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d) (defendant=s confession was admissible despite church elder=s
statement during interrogation that if defendant confessed, he would Aprobably@
just get Afive years instead of fifteen@).

There is no per
se rule against the use of psychological tactics in interrogations.  Miller, 796 F.2d at 605 n.6.  For example, an interrogator may play on a
suspect=s
sympathies or explain that honesty might be the best policy for a criminal who
hopes for leniency. Id. at 605. 
These ploys may play a part in the suspect=s decision to confess, but so long as Athat
decision is a product of the suspect=s own balancing of competing considerations, the confession is
voluntary.@  Id.

Here, appellant
claims his statement was involuntary because officers made two alleged false
promises.  First, he argues that Belton=s
comments that he, too, was a pedophile conveyed Athe message that sex with a child is not seriously wrong in the
eyes of the law, thus misleading [appellant] . . . to reasonably believe . . .
little or nothing [would] come of his making a confession.@  Next, he argues Belton=s
and Dickerson=s comments about how things would Ago
better@
for appellant if he cooperated with police implied a promise of leniency.  We reject these contentions.








First, it is
true Belton misled appellant into believing Belton was a pedophile. Appellant
proffers no evidence, however, to suggest this admission necessarily implied
the State would go easier on him.  Quite
the contrary, evidence shows Belton informed the appellant that it would be up
to a Ajury
or judge to decide what happens.@  Belton=s
assertion thus failed to satisfy at least two of the Sossamon criteria:
not only was it of no personal benefit to defendant, it was not the kind of
admission that would induce an innocent person to confess.  See Sossamon, 816 S.W.2d at 345.  Because appellant still had the ability to
make a free and rational choice of whether to answer or remain silent, Belton=s
alleged pedophilia was immaterial.

Moreover,
appellant offers no evidence to suggest Dickerson=s or Belton=s statements about what might happen if appellant cooperated or
did not cooperate were anything more than mere predictions about future
events.  A Aprediction about future events@ is not the same as a Apromise.@  United States v.
Fraction, 795 F. 2d 12, 15 (3rd Cir. 1986) (reasoning that a Aprediction@
is an action beyond a party=s control, while a Apromise@ is an offer to perform or withhold action within a party=s
control); see also Espinosa v. State, 899 S.W.2d 359, 362B63
(Tex. App.CHouston [14th Dist.] 1995, pet. ref=d) (finding the mere fact that the officer told the defendant
to AGo
ahead and tell us what happened . 
Everything will be better for you. 
You will get less time.@ did not render the defendant=s statement involuntary). 
Dickerson and Belton did not imply it was in their control to
determine what they told the district attorney about appellant=s
willingness to cooperate; they implied it was in appellant=s
control to determine what they told the
district attorney.

Finally,
appellant offers no evidence to suggest his will was overborne by the comments
of the officers.  A confession is
involuntary if Ait [is] obtained as the result of [the] promise.@  Fraction, 795 F.2d at 14.   Here, no promises were made to appellant by
his interrogators.

            Finding no causal connection between
Belton=s
and Dickerson=s statements and appellant=s decision to confess, we conclude appellant=s
will was not Aoverborne@ by police coercion.  

 

2.       The evidence does not suggest defendant=s
will was overborne by the police taking advantage of appellant=s
pedophilia.

 








In determining
the voluntariness of a confession, a court also considers whether the police
have knowledge of any special weakness of the suspect.  Gallegos, 370 U.S. at 53B55,
82 S. Ct. at 1212B13; Gomes, 9 S.W. 3d at 377.  Indeed, a suspect=s
ability to resist pressure is very relevant to whether his or her confession is
voluntary.  See Ashcraft v.
Tennessee, 322 U.S. 143, 64 S. Ct. 921 (1944) (fatigue); Haynes v.
Washington, 373 U.S. 503, 83 S. Ct. 1336 (1963) (lack of experience with
police); Greenwald v. Wisconsin, 390 U.S. 519, 88 S. Ct. 1152 (1968)
(physical illness); Blackburn v. Alabama, 361 U.S. 199, 80 S. Ct. 274
(1960) (mental illness); Culombe v. Connecticut, 367 U.S. 568, 81 S. Ct.
1860 (1961) (mental retardation); Davis v. North Carolina, 384 U.S. 737,
86 S. Ct. 1761 (1966) (race); Jones v. State, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996) (intoxication). 

In the instant
case, appellant claims his confession was involuntary because the police took
advantage of the fact that appellant is a pedophile.  He asserts that, by suggesting Detective
Belton was also a pedophile, Belton tricked appellant into believing his
offense was not serious and so would not be prosecuted.  Appellant=s argument fails for two reasons.

First,
appellant points to no evidenceCeither at his suppression hearing or at his trialCthat
suggests  appellant=s
will was Aoverborne@ by the false information that Belton was a pedophile.  Indeed, nothing in the record supports the
proposition that appellant would necessarily have remained silent had Belton
not suggested he, too, was attracted to children.

Next, appellant
cites no authority to suggest that a police officer=s
Abeing
a friend@
is necessarily an improper interrogation technique.  Quite the contrary, while a Afriendly,
supportive low key, nonconfrontational style@ is Aeffective in eliciting incriminating statements,@
it does not mean that style of questioning is improper or that resulting
statements are involuntary. Gomes, 9 S.W.3d at 378B79
(female officer did not overcome voluntariness of defendant=s
confession by taking advantage of defendant=s perception that she was a woman and so would sympathize with
defendant=s situation; officer=s Afalse friend@ technique was only an Aattempt to facilitate communication by being friendly and
supportive@).  See also Frazier,
394 U.S. at 737B38, 89 S. Ct. at 1424 (officer=s sympathetic suggestion to defendant that victim started fight
by making homosexual advances did not overcome voluntariness of defendant=s
confession).[9]








Because we
conclude the facts before the trial court do not support a finding that
appellant=s will was overborne by the fact that he was misled into
thinking Belton was a pedophile, we conclude appellant=s
statement was not involuntary based on this evidence

3.       The evidence does
not suggest police unlawfully denied appellant access to an attorney or parent.

 

Another factor
influencing the voluntariness of a defendant=s confession is whether police officers have denied access to
an attorney.  Miranda v. Arizona,
384 U.S. 436, 469, 86 S. Ct. 1602, 1625 (1966) (the presence or absence of
counsel is a significant condition because counsel can Aassure
that the individual=s right to choose between silence and speech remains unfettered
throughout the interrogation process@); see also Gomes, 9 S.W.3d at 377.  Also relevant is the denial of a defendant=s
access to family members.  Lane v.
State, 933 S.W.2d 504, 512 (Tex. Crim. App. 1996) (in
determining voluntariness of confession, court considered denial of access to
family members and observed there was no evidence appellant was isolated from
friends and family); see also Turner v. Pennsylvania, 338 U.S. 62, 64,
69 S. Ct. 1352, 1353 (1949).

Here, appellant
claims his statement was involuntary because he was denied access to both his
attorney and father.  Specifically,
appellant asserts that (1) the day before appellant=s
interview, appellant=s father asked Dickerson if appellant should have an attorney
present at his meeting with police, and Dickerson assured him all they planned
to do Awas
talk@;
(2) appellant was interviewed without being properly admonished of his rights;
and (3) Dickerson gave an untrue reason for appellant=s
father being denied access to appellant=s interview.  These
contentions have no merit.








First, while
appellant=s father may have inquired about whether appellant should have
counsel present at his interview, there is no evidence in our record that
appellant made a clear and unambiguous request for counsel. Rather, it shows
appellant said Aokay@ when informed of his right to an attorney and right to leave
at any time during his interview.  In the
absence of a clear and unambiguous request, appellant invoked no right to
counsel.  See Davis v. United States,
512 U.S. 452, 462, 114 S. Ct. 2350, 2357 (1994) (holding petitioner=s
remark, AMaybe
I should talk to a lawyer,@ was not an invocation of right to counsel); Robinson
v. State, 851 S.W.2d 216, 223 (Tex. Crim. App.
1991) (an invocation for counsel must be clear and unambiguous; the mere
mention of the word Aattorney@ or Alawyer@ without more does not automatically invoke right to
counsel).  See also Frazier, 394
U.S. at 737B39, 89 S. Ct. at 1424B25 (defendant=s comment, AI think I had better get a lawyer before I talk any more,@
was only a Apassing comment,@ not a request for counsel).

Next, the
evidence shows appellant was duly informed of his right to counsel: (1)
Dickerson and Belton testified they read appellant his rights prior to
interviewing him; (2) Dickerson and Belton testified appellant voluntarily
waived his right to counsel; (3) a signed Miranda card is in the record
indicating appellant was informed of his rights and waived them; and (4)
appellant=s signed, written confession includes a warning regarding
appellant=s right to counsel.  See
Tex. Crim. Proc. Code Ann. art.
38.22, '
2(b) (Vernon 1979).[10]  Thus, appellant was properly admonished of
his right to counsel.








Finally, the
evidence does not support appellant=s contention he was denied access to his father.  See Cammon v. State, 672 S.W.2d 845,
849 (Tex. App.CCorpus Christi 1984, no pet.) (noting that confession was not involuntary
because a family member was not present inasmuch as defendant never requested a
family member=s presence).  Rather, the
record shows appellant=s father was just a few feet away from appellant in an adjacent
hallway during appellant=s entire interview; appellant had an opportunity to take a break
during the interview; and appellant never once asked to speak with his
father.  Moreover, as determined above in
Part II. B(1), Dickerson=s comments to appellant=s father regarding confidentiality were true.  See Tex.
Fam. Code Ann. ' 261.201(a)(1)B(2) (Vernon 2002).

Because the
facts show appellant was a 28-year-old man with no physical or mental impairments,
who came to the police station voluntarily and stayed only two hours, we
conclude appellant was capable of deciding whether to confess without the
assistance of counsel or his father; therefore, we find appellant=s
will was not Aoverborne@ by meeting privately with officers at the time of his
questioning.

 

4.       The evidence does
not suggest appellant=s will was overborne by physical force.

 

To be
admissible, a confession Amust not be extracted by any sort of threats or violence.@  Bram, 168 U.S. at 542, 18 S. Ct. at
187.  Indeed, physical mistreatment is
very relevant in an analysis of the voluntariness of a confession.  See e.g. Gomes, 9 S.W.3d at 377
(physical brutality relevant to inquiry of voluntariness); Green, 850 F.
2d at 902 (considering whether there had been beatings and citing Brown v.
Mississippi, 297 U.S. 278, 56 S. Ct. 461 (1936)); see also Roberts v.
State, 545 S.W.2d 157, 160B61 (Tex.
Crim. App. 1977) (addressing
purported promise to release wife from custody).

Here, appellant
asserts his confession was involuntary because Belton allegedly pushed him
against a wall and told him to sign a confession or he would go to jail for a Along
time.@  This evidence was admitted at trial through
appellant=s father=s hearsay testimony.  At
appellant=s suppression hearing and at trial, Dickerson and Belton both
denied any allegations of force or coercion.

Because the
trial court is the sole judge of the weight and credibility of the witnesses=
testimony at a hearing to determine the voluntariness of a confessionCand
because the judge is free to believe or disbelieve all or any part of any
witness=s
testimonyCwe conclude that, under the totality of the circumstances test,
the evidence supports a finding that appellant=s statement was freely given. 
See Darden, 629 S.W.2d at 51.

 








5.       The evidence does
not suggest police had an improper motive. 

To determine
the voluntariness of a confession, a court should also review the police 

motive. 
Spano v. New York, 360 U.S. 315, 323, 79 S. Ct. 1202, 1207 (1959)
(finding appellant=s will was overborne by police pressure where police were not Atrying
to solve a crime,@ but rather were concerned primarily with securing a
statement).  

Here, appellant
asserts the police improperly Astrove to obtain a confession from appellant@
because (1) they employed a Aprocedure@ that had proved effective with securing statements from other
suspects; and (2) they admitted they Awanted [appellant] to give . . . an incriminating statement.@[11]  

Appellant has
waived his right to assert this claim, however, because he never mentioned it
in his motion to suppress or at his suppression hearing.  Tex.
R. App. P. 33.1(a); Etheridge v. State, 903 S.W.2d 1, 16 (Tex. Crim. App. 1994); see also Gomes, 9 S.W.3d at 381 (no preservation
of argument for appellate review where appellant failed to raise complaint in
motion to suppress or object at suppression hearing); Jeffley, 38 S.W.3d
at 861 (appellant failed to preserve claim that police did not notify her
mother when her non-custodial interrogation became custodialCthus
rendering her statement involuntaryCbecause she did not object in her motion to suppress or at her
suppression hearing.).

Moreover, while
Dickerson and Belton both acknowledge they were eager to obtain a statement
from appellant, nothing in the record suggests the officers preferred getting a
false statement over no statement.  Quite the contrary, Dickerson and Belton
testified at length about how they went out of their way to remove the barriers
that might have inhibited appellant=s truthfulness. 








For example,
the officers met with appellant privately, rather than in the presence of his
father.  They gave appellant an
opportunity to take a break and enjoy a soda. 
They removed the only womanCDickersonCfrom the room and left the two men to talk privately.  They even suggested Belton, too, was
attracted to children.  Such evidence is
not proof of an improper motive; rather, it demonstrates a desire to support
appellant even when the truth may be socially unacceptable.

Because
appellant never raised the issue of police motive in his motion to suppress,
and because there is no evidence that appellant=s will was Aoverborne@ by Dickerson=s and Belton=s resolve to elicit a statement from appellant, we find that
any motive police may have had to obtain a confession had no bearing on the
voluntariness of appellant=s confession.

Based on the Atotality
of the circumstances,@ we conclude appellant=s statement was voluntary.  Indeed, appellant voluntarily came to the
police station, was sober and well-rested at his interview, was Anot
in custody,@ was apprised of his legal rights, acquiesced to being interviewed
without his father or lawyer present, never was handcuffed or restrained in any
way, spent only two hours in the presence of officers, signed a Miranda
card, signed a confession that two officers and a notary public say was
voluntarily given, and left of his own free will.  Aside from the hearsay testimony of one
witness who was not even present during the interview, there is absolutely no
evidence of physical abuse, duress, or unlawful denial of counsel.  

Accordingly, we
conclude the trial court did not err in denying appellant=s
motion to suppress his confession and overrule appellant=s
fourth point of error.

Having
overruled all of appellant=s points of error, we affirm the judgment of the trial court in
cause numbers 872,251 and 872,252.

 

________________________________

John S. Anderson

Justice

 

 

Judgment rendered and Opinion filed August
7, 2003.

Panel consists of Justices Anderson,
Seymore, and Guzman.

Publish C Tex. R. App. P.
47.2(a)











[1]  See
Tex. Pen. Code Ann.
'
22.021(a)(1)(B)(iii),(a)2(B) (Vernon 2003).





[2]  See Act
of may 29, 1993, 73rd Leg., R.S., ch. 900, ' 1.01,
sec. 21.11(a), 1993 Tex. Gen. Laws 3586, 3616 (Subsequently amended, current
version at Tex. Pen. Code Ann. ' 21.11(a) (Vernon 2003)).





[3]  Appellant
complains of the entire colloquy pertaining to the State=s questions about DNA and medical evidence.  The State, however, points out that many of
appellant=s objections during this exchange were sustained with
the trial court asking the State to Arephrase@ and that, though given a Arunning objection,@ defense
counsel did not in fact receive an adverse ruling.  Because defense counsel did not pursue his
objection to an adverse ruling, the State claims, appellant cannot now complain
about them.  See Turner v. State,
805 S.W.2d 423, 431 (Tex. Crim. App. 1991). 
We disagree.  While we acknowledge
the trial court sustained several of defense counsel=s objections to the State=s questions, we conclude the question was ultimately
allowed to stand as presented here.





[4]  The record
indicates K.R. testified; thus, the fact pattern described in question two
never materialized.





[5]  The record
reflects that appellant filed two motions to suppress his statement.  The first, filed May 2, 2001, was
submitted by the appellant pro se and was unsigned.  The second, filed April 8, 2002, was filed by
appellant=s attorney and was properly signed.  Because appellant=s suppression hearing was held April 8, 2002, and the
trial court signed its order denying appellant=s motion
to suppress on that date, this court will presume that it is the April 8 motion
that was denied by the trial court.





[6]  At trial, both
Dickerson and Belton testified. 
It was here that facts regarding Belton=s
alleged pedophilia deception were elicited. 
Indeed, Belton himself admitted he took a Afriendly@ approach to his questioning of appellantCand that he told appellant that he himself was a
pedophile when he was not. This evidence was not before the trial court at
appellant=s suppression hearing, however.





[7]  As stated
earlier, in determining whether a trial court=s ruling
on a motion to suppress is supported by the record, an appellate court
generally considers only the evidence adduced at the hearing on the motion
unless the suppression issues have been consensually  relitigated by the parties during the trial
on the merits.  Rachal v. State,
917 S.W.2d 799, 809 (Tex. Crim. App. 1996); Dang, 99 S.W.3d at 179.  Here, Belton admitted at trial that he misled
appellant regarding his own pedophilia; additionally, appellant=s father testified that Dickerson misled appellant and
his father regarding appellant=s right to have an attorney present at appellant=s interview. 
Because the State did not object to admission of any of this testimony,
we will consider it Arelitigated at trial.@ Rachal,
917 S.W.2d at 809; Dang, 99 S.W.3d at 179. 





[8]  See also Shedelbower
v. Estelle, 885 F. 2d 570, 574 (9th Cir. 1989)
(holding that, despite officer=s
false statement that defendant had been identified by rape victim, the totality
of the circumstances compelled the conclusion that defendant=s
confession Awas not the
product of that falsehood@); Green v.
Scully, 850 F. 2d 894, 903B04
(2nd Cir. 1988) (holding that, under the totality of the circumstances test,
defendant=s statement was
voluntary, despite officer=s
false statement that fingerprints at the scene matched defendant=s);
Miller v. Fenton, 796 F.2d 598, 607 (3rd Cir. 1986) (holding officer=s
statements that victim was alive at beginning of interview and died during
interview did not render confession involuntary, despite fact that victim had
already died several hours earlier).





[9]  One court has
analyzed the application of the Afalse
friend@ technique this way: 
AWhile [being a false friend] might have made [the
defendant] feel more comfortable about speaking to [the officer], it would not
render his confession the product of a mistaken belief that the state would
grant him leniency.@  Miller,
796 F.2d at 610 (holding statement was voluntary when detective never told
defendant he had the authority to influence the charges brought against him or
that society would look favorably upon him). 
In the instant case, evidence shows appellant was never told by Belton
that he was not a criminal in the eyes of the State or that his confession
would change the consequences of his offense. 
Rather, Belton told appellant it would be up to a Ajury or judge to decide what happens.@





[10]  In appellant=s motion to suppress, he asserted his written
statement was given in violation of article 38.22 of the Texas Code of Criminal
Procedure.  Article 38.22 section 2
provides that:

[n]o written statement made by an accused as a result
of custodial interrogation is admissible as evidence against him in any
criminal proceeding unless it is shown on the face of the statement that: 

(a)    the
accused, prior to making the statement, either received from a magistrate the
warning provided in Article 15.17 . . . or received from the person to whom the
statement is made a warning that:  

(1)   he has the
right to remain silent and not make any statement at all and that any statement
he makes may be used against him at his trial; 

(2)   any
statement he makes may be used as evidence against him in court; 

(3)   he has the
right to have a lawyer present to advise him prior to and during any
questioning; 

(4)   if he is
unable to employ a lawyer, he has the right to have a lawyer appointed to advise
him prior to and during any questioning; and 

(5)   he has the
right to terminate the interview at any time; and

(b)   the
accused, prior to and during the making of the statement, knowingly,
intelligently, and voluntarily waived the rights set out in the warning
prescribed by Subsection (a) of this section.

Tex. Crim. Proc. Code Ann. art. 38.22, ' 2(a) B 2(b) (Vernon 1979). 
Here, appellant was not in custody at the time of his statemen; however,
the record shows he nevertheless was Aread his
rights@ and signed a waiver that included the warnings in
Subsection 2(a).





[11]  Although
appellant does not say so precisely, he seems to imply that Dickerson
and Belton cared more about closing their case than obtaining the truth.